2012 VT 19

# Wells Fargo Bank Minnesota, N.A., as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certifications, Series 2011-CF2 v. Randy J. Rouleau

[46 A.3d 905]

No. 11-078

Present: Dooley, Johnson and Burgess, JJ., and Kupersmith and Eaton, Supr. JJ., Specially Assigned

Opinion Filed March 23, 2012

*Heather Z. Cooper* and *Rodney E. McPhee* of *Kenlan, Schwiebert, Facey & Goss, P.C.*, Rutland, for Plaintiff-Appellee.

*Lauren S. Kolitch*, Waitsfield, and *Randy J. Rouleau*, Pro Se, Berlin, for Defendant-Appellant.

¶ 1. **Burgess, J.** Defendant Randy J. Rouleau appeals the decision of the Washington Civil Division holding that Wells Fargo Bank Minnesota, N.A., as Trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commer-

cial Mortgage Pass-Through Certifications, Series 2001-CF2 (Wells Fargo), is entitled to enforce defendant's personal guaranty of a promissory note secured by mortgages on five mobile home parks. The civil division concluded that Wells Fargo could enforce the guaranty as the holder of the note under 9A V.S.A. § 3-301(i), which defines who may enforce a negotiable instrument. Defendant argues that the court erred in ruling that Wells Fargo has standing to enforce the guaranty because Wells Fargo cannot prove the chain of assignments from the original lender to itself and therefore that Wells Fargo, and not some third party, is the assignee of the guaranty. Defendant also argues that the court erred in treating assignment of the note as sufficient to show assignment of the guaranty because the guaranty, in contrast to the note, is a separate contract that must be expressly assigned. Finally, defendant argues that because Wells Fargo lacks standing to enforce the guaranty, the court lacked jurisdiction over the enforcement action. We affirm.

¶ 2. The civil division's findings may be summarized as follows. In November 2000, R&G Properties, Inc. (R&G) borrowed $2.15 million from Column Financial, Inc. (Column). Defendant, as R&G's president and agent, signed a promissory note memorializing the loan, which was secured by a mortgage on five mobile home parks owned by R&G. Attached to the note is an allonge, entitled "First Allonge to Promissory Note," assigning the note to Wells Fargo. The allonge states, "Pay to the order of *, without recourse or warranty," below which, stamped in ink, appears Wells Fargo's name next to an asterisk. Another document, entitled "Assignment of Mortgage," similarly assigns the mortgage on each of R&G's five properties to Wells Fargo. Defendant also executed a personal guaranty, entitled "Exceptions to Non-Recourse Obligations of Borrower Agreement," stipulating that defendant would be personally liable for "the entire Secured Indebtedness . . . if the Property or any part thereof shall become an asset in [a bankruptcy proceeding]."

¶ 3. Column granted R&G's loan intending that it become part of a larger transaction known as securitization. Securitization involves the pooling of many similar loans into a trust, which the trustee manages for the benefit of individual investors. This process requires assignment of the loans to the trustee. To that end, at the time of the loan, Column prepared a General Assignment in blank warranting that it had not previously as-

signed the note, mortgage, or any of the other security documents to any other party, and that it had the "full right and power" to make such an assignment in the future. In April 2001, Wells Fargo, Credit Suisse First Boston — which bought Column sometime after November 2000 — and GMAC Commercial Mortgage Corporation (GMAC) entered into a "Pooling and Servicing Agreement," which created a special form of trust called a Real Estate Mortgage Investment Conduit (REMIC). R&G's loan, along with about 200 similar loans, was deposited into the REMIC as part of the securitization. Under the Pooling and Servicing Agreement, Wells Fargo was the trustee and would hold the promissory notes, mortgages, and other security documents related to the loans that were deposited into the REMIC.

¶ 4. The exact date on which R&G's promissory note was assigned to Wells Fargo is unknown. By June 2002, however, the securitization was "largely complete."[1] By October 2003, the assignment of the mortgage on the last of R&G's five mobile home parks had been recorded.

¶ 5. In addition to the court's findings, the following facts form the background of this case. In September 2008, R&G filed for bankruptcy, triggering defendant's liability pursuant to the guaranty.[2] On February 13, 2009, Capmark Finance, Inc. (formerly GMAC), as special servicer of the loan acting on behalf of Wells Fargo, filed an action in the Washington Superior Court to enforce the guaranty. Capmark itself later filed for bankruptcy, was sold to Berkadia Commercial Mortgage, and Berkadia became special servicer of R&G's loan. Based on these events, in an April 19, 2009 decision, the superior court granted Capmark's motion to substitute Wells Fargo as the plaintiff in the guaranty action. It reasoned that Capmark, in its role as special servicer, had standing to enforce the guaranty only as Wells Fargo's representative, and that "Wells Fargo remains, as it always has been, the real party in interest."

---

[1] The allonge, by which the note was transferred, was signed and witnessed, but not dated.

[2] Prior to this case, defendant and Column argued before this Court regarding defendant's attempt to sell one of its mortgaged mobile home park properties. See *R&G Props., Inc. v. Column Fin., Inc.*, 2008 VT 113, 184 Vt. 494, 968 A.2d 286. These two cases share certain underlying facts, but do not involve the same legal issues.

¶ 6. The civil division conducted a bench trial on the guaranty action, during which the only issue was whether Wells Fargo had standing to enforce the guaranty. At trial, Wells Fargo produced the original note, allonge, and assignment of the mortgage, as well as an original guaranty, although there is evidence of multiple originals of the guaranty. The court accordingly found that Wells Fargo was the holder of the note under 9A V.S.A. § 3-301(i) and was entitled to enforce the guaranty. Defendant appealed.

¶ 7. We first address defendant's claim that the civil division erred in treating assignment of the note as sufficient to prove assignment of the guaranty. We consider de novo whether the assignment of a personal guaranty follows, as a matter of law, the assignment of a promissory note. *In re Vill. Assocs. Act 250 Land Use Permit*, 2010 VT 42A, ¶ 7, 188 Vt. 113, 998 A.2d 712. The civil division, applying Restatement (Third) of Suretyship and Guaranty § 13(5) (1996), concluded that "assignment of the note and mortgage results in the assignment of the personal guaranty as a matter of law — even without an express assignment of the guaranty."

¶ 8. Defendant, in contrast, argues that because the guaranty is an independent contract, Wells Fargo needed to prove that it was assigned not just the note and the mortgage, but also the guaranty itself. Defendant submits that negotiable instruments, like the note, must be distinguished from nonnegotiable instruments, like the guaranty, in that negotiable instruments may be assigned in blank, while nonnegotiable instruments may not. As such, defendant asserts that Wells Fargo needed, but failed, to prove that it was expressly assigned the guaranty. We hold that proof of the assignment of a promissory note and mortgage is sufficient as a matter of law to establish assignment of a personal guaranty.

¶ 9. Personal guaranties are contacts governed by general principles of contract law. See Restatement (Third) of Suretyship and Guaranty § 7 (stating that principles of contract formation apply to formation of secondary obligations). Under contract law, "[a]n assignment agreement must clearly reflect an intent to assign the right in question." *Desrochers v. Desrochers*, 173 Vt. 312, 316, 795 A.2d 1171, 1174 (2002); see also Restatement (Second) of Contracts § 324 (1981) (providing that assignment of contractual right requires obligee to "manifest an intention to

transfer the right to another person"). Personal guaranties are also secondary obligations, however, and parties' rights and duties under a guaranty derive from the principal obligation. See *Vt. Dev. Credit Corp. v. Kitchel*, 149 Vt. 421, 430-31, 544 A.2d 1165, 1170 (1988) (noting that guarantor's obligation depends on principal obligor's failure to meet obligation under promissory note).

■ ■ ¶ 10. Because of a guaranty's link to the principal obligation, it follows that an obligee's assignment of the principal obligation is sufficient to manifest the requisite intent to assign the guaranty. Restatement (Third) of Suretyship and Guaranty § 13(5). As explained in the Restatement:

> A secondary obligation, like a security interest, has value only as an adjunct to an underlying obligation. It can usually be assumed that a person assigning an underlying obligation intends to assign along with it any secondary obligation supporting it. Thus, unless there is agreement to the contrary or assignment is prohibited . . . , assignment of the underlying obligation also assigns the secondary obligation.

*Id.* § 13 cmt. f. The court correctly resolved this question, therefore, by concluding whether Wells Fargo was assigned the guaranty in this case depended on whether it was assigned the note and mortgage.

■ ¶ 11. We next consider defendant's main argument that the civil division erred in ruling that Wells Fargo has standing to enforce the guaranty. Defendant argues that Wells Fargo lacks standing because it cannot prove that the loan documents were deposited into the REMIC. In other words, defendant claims that Wells Fargo cannot prove that it was assigned the note and mortgage. Defendant's argument implies that Vermont law requires proof of chain of title to enforce a personal guaranty, a question we consider de novo. *In re Vill. Assocs. Act 250 Land Use Permit*, 2010 VT 42A, ¶ 7. We hold that a plaintiff to whom a promissory note or mortgage was not originally issued need not prove chain of title to enforce a personal guaranty of these principal obligations. Rather, a plaintiff in an enforcement action establishes its standing if it is in possession of the original note and mortgage at the time the complaint is filed and the instruments are made payable to the plaintiff.

¶ 12. The applicable statute provides that a person is entitled to enforce an "instrument" if the person is "the holder of the instrument." 9A V.S.A. § 3-301(i). An "instrument" is a "negotiable instrument," such as a promissory note. *Id.* § 3-104; see also *U.S. Bank Nat'l Ass'n v. Kimball*, 2011 VT 81, ¶ 13, 190 Vt. 210, 27 A.3d 1087 (describing nature of promissory note). " 'Holder' means . . . the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." 9A V.S.A. § 1-201(21)(A). "A promise or order is payable to bearer if it . . . states that it is payable to bearer or to the order of bearer," *id.* § 3-109(a)(1) and a "bearer" is a person "who possesses a negotiable instrument marked 'payable to bearer' " or to the order of bearer, Black's Law Dictionary 163 (8th ed. 2004).

¶ 13. To enforce a promissory note or mortgage under § 3-301(i), therefore, a person must be in possession of the instrument at the time that the enforcement action is filed and the instrument must be made payable to the person or to the order of the person. See *Kimball*, 2011 VT 81, ¶ 14 (outlining standing requirements in home foreclosure context). These requirements are the same where the original endorsement is made in blank. See 9A V.S.A. § 3-205 (describing various ways to endorse a negotiable instrument). Moreover, Vermont Rule of Civil Procedure 80.1(b)(1), which governs complaints in the analogous mortgage foreclosure context, corresponds with this reading, providing in relevant part that:

> The plaintiff shall attach to the complaint copies of the original note and mortgage deed and proof of ownership thereof, including copies of all original endorsements and assignments of the note and mortgage deed. The plaintiff shall plead in its complaint that *the originals are in the possession and control of the plaintiff* or that the plaintiff is otherwise entitled to enforce the mortgage note pursuant to the Uniform Commercial Code.

V.R.C.P. 80.1(b)(1) (emphasis added). Contrary to defendant's argument, then, Vermont law does not require a plaintiff seeking to enforce a note or mortgage to prove chain of title to establish standing to enforce the instrument.

¶ 14. Reaching this conclusion on the basis of Vermont statutory law and case precedent, we note that the primary cases relied on

by Wells Fargo and defendant are each inapposite. Wells Fargo cites *Livonia Property Holdings, L.L.C. v. 12840-12976 Farmington Road Holdings, L.L.C.*, 717 F. Supp. 2d 724 (E.D. Mich. 2010), for the proposition that a plaintiff seeking to enforce a note or mortgage *need not* prove chain of title. Although the *Livonia* court adopted this position, this case is of little assistance here because *Livonia* interpreted a Michigan mortgage foreclosure statute that expressly required a plaintiff to establish a record chain of assignments, whereas § 3-301(i) has no such requirement. See *id.* at 734-35. Defendant, on the other hand, relies on *U.S. Bank National Ass'n v. Ibanez*, 941 N.E.2d 40 (Mass. 2011) — another mortgage foreclosure case — for the proposition that a plaintiff in an enforcement action *must* establish chain of title. But *Ibanez* requires only that the foreclosing party be able to "accurately . . . identify itself as the present holder" of the mortgage at the time notice is given of the impending foreclosure sale, which it may do *either* by producing the original documentation of assignment or establishing chain of title. See *id.* at 53 (discussing requirements to establish standing in mortgage foreclosure context). Neither *Livonia* nor *Ibanez*, therefore, bears on our reading of § 3-301(i).

■ ■ ¶ 15. Having decided that the guaranty follows the note and that Wells Fargo need not establish chain of title under § 3-301(i), the question of Wells Fargo's standing becomes a deferential review of the civil division's simple legal syllogism. Under § 3-301(i), the holder of the note and mortgage can enforce the guaranty. The civil division found that Wells Fargo is the holder and therefore can enforce the guaranty. Argued below, this case turned on this second, factual premise, which Wells Fargo needed to prove only by a preponderance of the evidence. See 9A V.S.A. § 1-201(8) (providing that in cases governed by Uniform Commercial Code " '[b]urden of establishing a fact' means the burden of persuading the trier of fact that the existence of the fact is more probable than its nonexistence"). On appeal, we will uphold the court's findings unless clearly erroneous and affirm its conclusions "as long as they are reasonably supported by the findings." *Waterbury Feed Co. v. O'Neil*, 2006 VT 126, ¶ 6, 181 Vt. 535, 915 A.2d 759 (mem.); see also V.R.C.P. 52(a)(2). We hold that the court did not err in finding that Wells Fargo was the holder of the note and mortgage, and that this finding supports the court's conclusion that Wells Fargo can enforce the guaranty.

¶ 16. As discussed above, to establish itself as the holder of the note and mortgage, Wells Fargo had to prove that it possessed the originals of each instrument and that it had been assigned these interests. Defendant does not challenge that Wells Fargo is in possession of the original note and assignment of mortgage, which Wells Fargo produced at trial. The final question, therefore, is whether Wells Fargo made the requisite showing that it had been assigned the note and mortgage prior to the filing of the enforcement action on February 13, 2009.

¶ 17. The record in this case supports the civil division's finding that Wells Fargo had been assigned the note and the mortgage prior to the filing of the enforcement action. The evidence on this question came primarily from the testimony of Tommy Floyd, an employee of the loan's special servicer, Berkadia. At trial, Mr. Floyd was the authority on the way the securitization process works generally and, based on his in-court examination of the loan documents related to R&G's loan, he also testified as to how the securitization process worked in this case. He testified that because R&G's loan was intended from the start to be securitized — again, grouped with a larger number of loans and transferred to a trustee — the note and mortgage, like those in many other cases where securitization takes place, were originally assigned in blank and then specifically assigned to Wells Fargo as trustee. The assignment of the note and mortgage then occurred, as it normally would have, at the point when securitization was complete, in this case by October 2003, upon the recording of the mortgage on the last of R&G's properties. In short, Mr. Floyd testified:

> [I]t's very common that when these secured type loans are made the lender would make a number of these loans, then hold those loans to be securitized some time in the future. Such as this one, [Column] made this loan plus numerous other loans. . . . And then they bundle those up into a securitization at a later time and that's when this assignment was recorded.

Mr. Floyd's testimony was supported by, and largely based on, the original loan documents in this case, including the note, allonge, and assignment of mortgage, each of which Wells Fargo produced at trial. The allonge and assignment of mortgage name Wells Fargo as the assignee of the note and mortgage, respectively.

¶ 18. As the civil division noted, there was no evidence to contradict Mr. Floyd's explanation of how and when the various transactions of the securitization process took place in this case. Contrary to defendant's implied assertion, therefore, there is no evidence to support that the note and mortgage were assigned to some third party besides Wells Fargo.[3] Based on the evidence presented, we cannot conclude that the court's finding that Wells Fargo was assigned the note and mortgage was clearly erroneous. Moreover, the court's finding on this point, essential to Wells Fargo's status as a holder, directly supports its conclusion that Wells Fargo has standing to enforce the guaranty. Because Wells Fargo has such standing, defendant's final argument that the court lacked jurisdiction over the enforcement action has no merit.

*Affirmed.*

---

[3] Defendant argues in his brief that there is "undisputed evidence that Column transferred the original loan documents to Bank One Mortgage Warehouse" on November 13, 2000. According to Mr. Floyd's testimony, this transaction was based on a "custodial agreement between Bank One Trust Company and [Column]," under which Bank One Mortgage Warehouse would "hold the documents for [Column]." The civil division, however, interpreted this as evidence on the "irrelevant" issue of which entity had "physical possession of the documents in accord with a custody agreement at the inception of the loan." It is undisputed that Wells Fargo possessed originals of the loan documents at trial. That Bank One Mortgage Warehouse may have played a role as keeper of the loan documents early in the securitization process casts no doubt on Wells Fargo's right to enforce the guaranty and raises no specter of some unknown third party with substantive rights to the note and mortgage.