2012 VT 19



Wells Fargo Bank Minnesota as
Trustee for the Registered Holders of Credit Suisse First Boston Mortgage
Securities Commercial Mortgage Pass-Through Certifications, Series 2011-CF2 v.
Rouleau (2011-078)

 

2012 VT 19

 

[Filed 23-Mar-2012]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions, Vermont Supreme Court, 109 State Street,
Montpelier, Vermont 05609-0801 of any errors in order that corrections may be
made before this opinion goes to press.

 

 


 2012 VT 19 
 
  


 No. 2011-078
 
  


 Wells Fargo Bank Minnesota, N.A.
 as 
 Trustee for the Registered Holders of Credit Suisse 
 First Boston Mortgage Securities Corp.
 Commercial Mortgage Pass-Through Certifications,
 Series 2011-CF2 
 
 
 Supreme Court
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Washington Unit,
 
 
  
 
 
 Civil Division
 
 
  
 
 
  
 
 
 Randy J. Rouleau
 
 
 October Term, 2011
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Geoffrey
 W. Crawford, J.
 
 
  
 Heather Z. Cooper and Rodney E.
 McPhee of Kenlan, Schwiebert, Facey & Goss, P.C., Rutland,
   for Plaintiff-Appellee.
 
 
  
 Lauren S. Kolitch, Waitsfield, and
 Randy J. Rouleau, Pro Se, Berlin, for Defendant-Appellant.
  
 
  

PRESENT:  Dooley, Johnson, and Burgess, JJ., and
Kupersmith and Eaton, Supr. JJ.,

           
        Specially Assigned

 

 

¶ 1.            
BURGESS, J.  Defendant Randy J. Rouleau appeals the decision
of the Washington Civil Division holding that Wells Fargo Bank Minnesota, N.A.,
as Trustee for the registered holders of Credit Suisse First Boston Mortgage
Security Corp., Commercial Mortgage Pass-Through Certificates, Series 2001-CF2
(Wells Fargo), is entitled to enforce defendant’s personal guaranty of a
promissory note secured by mortgages on five mobile home parks.  The civil
division concluded that Wells Fargo could enforce the guaranty as the holder of
the note under 9A V.S.A. § 3-301(i), which defines who may enforce a negotiable
instrument.  Defendant argues that the court erred in ruling that Wells
Fargo has standing to enforce the guaranty because Wells Fargo cannot prove the
chain of assignments from the original lender to itself and therefore that
Wells Fargo, and not some third party, is the assignee of the guaranty. 
Defendant also argues that the court erred in treating assignment of the note
as sufficient to show assignment of the guaranty because the guaranty, in contrast
to the note, is a separate contract that must be expressly assigned. 
Finally, defendant argues that because Wells Fargo lacks standing to enforce
the guaranty, the court lacked jurisdiction over the enforcement action. 
We affirm.

¶ 2.            
The civil division’s findings may be summarized as follows.  In
November 2000, R&G Properties, Inc. (R&G) borrowed $2.15 million from
Column Financial, Inc. (Column). Defendant, as R&G’s president and agent,
signed a promissory note memorializing the loan, which was secured by a
mortgage on five mobile home parks owned by R&G.  Attached to the note
is an allonge, entitled “First Allonge to Promissory Note,” assigning the note
to Wells Fargo.  The allonge states, “Pay to the order of *, without
recourse or warranty,” below which, stamped in ink, appears Wells Fargo’s name
next to an asterisk.  Another document, entitled “Assignment of
Mortgage,” similarly assigns the mortgage on each of R&G’s five properties
to Wells Fargo.  Defendant also executed a personal guaranty, entitled
“Exceptions to Non-Recourse Obligations of Borrower Agreement,” stipulating
that defendant would be personally liable for “the entire Secured Indebtedness
. . . if the Property or any part thereof shall become an asset in [a
bankruptcy proceeding].”  

¶ 3.            
Column granted R&G’s loan intending that it become part of a larger
transaction known as securitization.  Securitization involves the pooling
of many similar loans into a trust, which the trustee manages for the benefit
of individual investors.  This process requires assignment of the loans to
the trustee.  To that end, at the time of the loan, Column prepared a
General Assignment in blank warranting that it had not previously assigned the
note, mortgage, or any of the other security documents to any other party, and
that it had the “full right and power” to make such an assignment in the
future.  In April 2001, Wells Fargo, Credit Suisse First Boston—which
bought Column sometime after November 2000—and GMAC Commercial Mortgage Corporation
(GMAC) entered into a “Pooling and Servicing Agreement,” which created a
special form of trust called a Real Estate Mortgage Investment Conduit (REMIC).
R&G’s loan, along with about 200 similar loans, was deposited into the
REMIC as part of the securitization.  Under the Pooling and Servicing
Agreement, Wells Fargo was the trustee and would hold the promissory notes,
mortgages, and other security documents related to the loans that were
deposited into the REMIC. 

¶ 4.            
The exact date on which R&G’s promissory note was assigned to Wells
Fargo is unknown.  By June 2002, however, the securitization was
“largely complete.”[1] 
By October 2003, the assignment of the mortgage on the last of R&G’s
five mobile home parks had been recorded.  

¶ 5.            
In addition to the court’s findings, the following facts form the
background of this case.  In September 2008, R&G filed for bankruptcy,
triggering defendant’s liability pursuant to the guaranty.[2]  On February 13, 2009, Capmark
Finance, Inc. (formerly GMAC), as special servicer of the loan acting on behalf
of Wells Fargo, filed an action in the Washington Superior Court to enforce the
guaranty.  Capmark itself later filed for bankruptcy, was sold to Berkadia
Commercial Mortgage, and Berkadia became special servicer of R&G’s
loan.  Based on these events, in an April 19, 2009 decision, the superior
court granted Capmark’s motion to substitute Wells Fargo as the plaintiff in
the guaranty action.  It reasoned that Capmark, in its role as special
servicer, had standing to enforce the guaranty only as Wells Fargo’s
representative, and that “Wells Fargo remains, as it always has been, the real
party in interest.”  

¶ 6.            
The civil division conducted a bench trial on the guaranty action,
during which the only issue was whether Wells Fargo had standing to enforce the
guaranty.  At trial, Wells Fargo produced the original note, allonge, and
assignment of the mortgage, as well as an original guaranty, although there is
evidence of multiple originals of the guaranty.  The court accordingly
found that Wells Fargo was the holder of the note under 9A V.S.A. § 3-301(i)
and was entitled to enforce the guaranty.  Defendant appealed.

¶ 7.            
We first address defendant’s claim that the civil division erred in
treating assignment of the note as sufficient to prove assignment of the
guaranty.  We consider de novo whether the assignment of a personal
guaranty follows, as a matter of law, the assignment of a promissory
note.  In re Vill. Assocs. Act 250 Land Use Permit, 2010 VT 42A, ¶
7, 188 Vt. 113, 998 A.2d 712.  The civil division, applying Restatement
(Third) of Suretyship and Guaranty § 13(5) (1996), concluded that
“assignment of the note and mortgage results in the assignment of the personal
guaranty as a matter of law—even without an express assignment of the
guaranty.”  

¶ 8.            
Defendant, in contrast, argues that because the guaranty is an
independent contract, Wells Fargo needed to prove that it was assigned not just
the note and the mortgage, but also the guaranty itself.  Defendant
submits that negotiable instruments, like the note, must be distinguished from
nonnegotiable instruments, like the guaranty, in that negotiable instruments
may be assigned in blank, while nonnegotiable instruments may not.  As
such, defendant asserts that Wells Fargo needed, but failed, to prove that it
was expressly assigned the guaranty.  We hold that proof of the assignment
of a promissory note and mortgage is sufficient as a matter of law to establish
assignment of a personal guaranty.   

¶ 9.            
Personal guaranties are contacts governed by general principles of
contract law.  See Restatement (Third) of Suretyship and Guaranty § 7 (1996)
(stating that principles of contract formation apply to formation of secondary
obligations).  Under contract law, “an assignment agreement must clearly
reflect an intent to assign the right in question.”  Desrochers v.
Desrochers, 173 Vt. 312, 316, 795 A.2d 1171, 1174 (2002); see also
Restatement (Second) of Contracts § 324 (1981) (providing that assignment of
contractual right requires obligee to “manifest an intention to transfer the
right to another person”).  Personal guaranties are also secondary
obligations, however, and parties’ rights and duties under a guaranty derive
from the principal obligation.  See Vt. Dev. Credit Corp. v. Kitchel,
149 Vt. 421, 430-31, 544 A.2d 1165, 1170 (1988) (noting that guarantor’s
obligation depends on principal obligor’s failure to meet obligation under
promissory note).  

¶ 10.        
Because of a guaranty’s link to the principal obligation, it follows
that an obligee’s assignment of the principal obligation is sufficient to
manifest the requisite intent to assign the guaranty.  Restatement (Third)
of Suretyship and Guaranty § 13(5).  As explained in the Restatement:

A
secondary obligation, like a security interest, has value only as an adjunct to
an underlying obligation.  It can usually be assumed that a person
assigning an underlying obligation intends to assign along with it any
secondary obligation supporting it.  Thus, unless there is agreement to
the contrary or assignment is prohibited . . ., assignment of the underlying
obligation also assigns the secondary obligation.  

 

Id. § 13 cmt. f.  The
court correctly resolved this question, therefore, by concluding whether Wells
Fargo was assigned the guaranty in this case depended on whether it was
assigned the note and mortgage.  

¶ 11.        
We next consider defendant’s main argument that the civil division erred
in ruling that Wells Fargo has standing to enforce the guaranty. 
Defendant argues that Wells Fargo lacks standing because it cannot prove that
the loan documents were deposited into the REMIC.  In other words,
defendant claims that Wells Fargo cannot prove that it was assigned the note
and mortgage.  Defendant’s argument implies that Vermont law requires
proof of chain of title to enforce a personal guaranty, a question we consider
de novo.  In re Vill. Assocs. Act 250 Land Use Permit, 2010 VT 42A,
¶ 7.  We hold that a plaintiff to whom a promissory note or mortgage was
not originally issued need not prove chain of title to enforce a personal
guaranty of these principal obligations.  Rather, a plaintiff in an
enforcement action establishes its standing if it is in possession of the
original note and mortgage at the time the complaint is filed and the
instruments are made payable to the plaintiff. 

¶ 12.        
The applicable statute provides that a person is entitled to enforce an
“instrument” if the person is “the holder of the instrument.”  9A V.S.A. §
3-301(i).  An “instrument” is a “negotiable instrument,” such as a
promissory note.  Id. § 3-104; see also U.S. Bank Nat’l Ass’n.
v. Kimball, 2011 VT 81, ¶ 13, ___ Vt. ___, 27 A.3d 1087 (describing nature
of promissory note).  “ ‘Holder’ means . . . the person in possession of a
negotiable instrument that is payable either to bearer or to an identified
person that is the person in possession.”  9A V.S.A § 1-201(21)(A). 
“A promise or order is payable to bearer if it . . . states that it is payable
to bearer or to the order of bearer,” id. § 3-109 and a “bearer” is a
person “who possesses a negotiable instrument marked ‘payable to bearer’ ” or
to the order of bearer,  Black’s Law Dictionary 163 (8th ed. 2004).  

¶ 13.        
To enforce a promissory note or mortgage under § 3-301(i), therefore, a
person must be in possession of the instrument at the time that the enforcement
action is filed and the instrument must be made payable to the person or to the
order of the person.  See Kimball, 2011 VT 81, ¶ 14
(outlining standing requirements in home foreclosure context).  These
requirements are the same where the original endorsement is made in
blank.  See 9A V.S.A. § 3-205 (describing various ways to endorse a
negotiable instrument).  Moreover, Vermont Rule of Civil Procedure
80.1(b)(1), which governs complaints in the analogous mortgage foreclosure
context, corresponds with this reading, providing in relevant part that:

The
plaintiff shall attach to the complaint copies of the original note and
mortgage deed and proof of ownership thereof, including copies of all original
endorsements and assignments of the note and mortgage deed.  The plaintiff
shall plead in its complaint that the originals are in the possession and
control of the plaintiff or that the plaintiff is otherwise entitled to
enforce the mortgage note pursuant to the Uniform Commercial Code.

 

V.R.C.P. 80.1(b)(1) (emphasis
added).  Contrary to defendant’s argument, then, Vermont law does not
require a plaintiff seeking to enforce a note or mortgage to prove chain of
title to establish standing to enforce the instrument.

¶ 14.        
Reaching this conclusion on the basis of Vermont statutory law and case
precedent, we note that the primary cases relied on by Wells Fargo and
defendant are each inapposite.  Wells Fargo cites Livonia Property
Holdings, LLC V. 12840-12976 Farmington Road Holdings, LLC, 717 F. Supp. 2d
724 (E.D. Mich. 2010), for the proposition that a plaintiff seeking to enforce
a note or mortgage need not prove chain of title.  Although the Livonia
court adopted this position, this case is of little assistance here because Livonia
interpreted a Michigan mortgage foreclosure statute that expressly required a
plaintiff to establish a record chain of assignments, whereas § 3-301(i) has no
such requirement.  See id. at 734-35.  Defendant, on the other
hand, relies on U.S. Bank National Ass’n. v. Ibanez, 941 N.E.2d 40
(Mass. 2011)—another mortgage foreclosure case—for the proposition that a
plaintiff in an enforcement action must establish chain of title. 
But Ibanez requires only that the foreclosing party be able to
“accurately . . . identify itself as the present holder” of the mortgage at the
time notice is given of the impending foreclosure sale, which it may do either
by producing the original documentation of assignment or establishing chain of
title.  See id. at 53 (discussing requirements to establish
standing in mortgage foreclosure context).  Neither Livonia nor Ibanez,
therefore, bears on our reading of § 3-301(i).

¶ 15.        
Having decided that the guaranty follows the note and that Wells Fargo
need not establish chain of title under § 3-301(i), the question of Wells
Fargo’s standing becomes a deferential review of the civil division’s simple
legal syllogism.  Under § 3-301(i), the holder of the note and mortgage
can enforce the guaranty.  The civil division found that Wells Fargo is
the holder and therefore can enforce the guaranty.  Argued below, this
case turned on this second, factual premise, which Wells Fargo needed to prove
only by a preponderance of the evidence.  See 9A V.S.A. § 1-201(8)
(providing that in cases governed by Uniform Commercial Code “ ‘burden of
establishing a fact’ means the burden of persuading the trier of fact that the
existence of the fact is more probable than its non-existence”).  On
appeal, we will uphold the court’s findings unless clearly erroneous and affirm
its conclusions “as long as they are reasonably supported by the
findings.”  Waterbury Feed Co., LLC v. O’Neil, 2006 VT 126, ¶ 6,
181 Vt. 535, 915 A.2d 759 (mem.); see also V.R.C.P. 52(a)(2).  We hold
that the court did not err in finding that Wells Fargo was the holder of the
note and mortgage, and that this finding supports the court’s conclusion that
Wells Fargo can enforce the guaranty.      

¶ 16.        
As discussed above, to establish itself as the holder of the note and
mortgage, Wells Fargo had to prove that it possessed the originals of each
instrument and that it had been assigned these interests.  Defendant does
not challenge that Wells Fargo is in possession of the original note and
assignment of mortgage, which Wells Fargo produced at trial.  The final
question, therefore, is whether Wells Fargo made the requisite showing that it
had been assigned the note and mortgage prior to the filing of the enforcement
action on February 13, 2009.

¶ 17.        
The record in this case supports the civil division’s finding that Wells
Fargo had been assigned the note and the mortgage prior to the filing of the
enforcement action.  The evidence on this question came primarily from the
testimony of Tommy Floyd, an employee of the loan’s special servicer,
Berkadia.  At trial, Mr. Floyd was the authority on the way the
securitization process works generally and, based on his in-court examination
of the loan documents related to R&G’s loan, he also testified as to how
the securitization process worked in this case.  He testified that because
R&G’s loan was intended from the start to be securitized—again, grouped
with a larger number of loans and transferred to a trustee—the note and
mortgage, like those in many other cases where securitization takes place, were
originally assigned in blank and then specifically assigned to Wells Fargo as
trustee.  The assignment of the note and mortgage then occurred, as it
normally would have, at the point when securitization was complete, in this
case by October 2003, upon the recording of the mortgage on the last of
R&G’s properties.  In short, Mr. Floyd testified:

[I]t’s
very common that when these secured type loans are made the lender would make a
number of these loans, then hold those loans to be securitized some time in the
future.  Such as this one, [Column] made this loan plus numerous other
loans. . . . And then they bundle those up into a securitization at a later
time and that’s when this assignment was recorded.  

 

Mr. Floyd’s testimony was supported
by, and largely based on, the original loan documents in this case, including
the note, allonge, and assignment of mortgage, each of which Wells Fargo
produced at trial.  The allonge and assignment of mortgage name Wells
Fargo as the assignee of the note and mortgage, respectively. 

¶ 18.        
As the civil division noted, there was no evidence to contradict Mr.
Floyd’s explanation of how and when the various transactions of the
securitization process took place in this case.  Contrary to defendant’s implied
assertion, therefore, there is no evidence to support that the note and
mortgage were assigned to some third party besides Wells Fargo.[3]  Based on the evidence presented, we
cannot conclude that the court’s finding that Wells Fargo was assigned the note
and mortgage was clearly erroneous.  Moreover, the court’s finding on this
point, essential to Wells Fargo’s status as a holder, directly supports its
conclusion that Wells Fargo has standing to enforce the guaranty.  Because
Wells Fargo has such standing, defendant’s final argument that the court lacked
jurisdiction over the enforcement action has no merit.

Affirmed.

 

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[1] 
The allonge, by which the note was transferred, was signed and witnessed, but
not dated.  

 





[2] 
Prior to this case, defendant and Column argued before this Court regarding
defendant’s attempt to sell one of its mortgaged mobile home park
properties.  See R&G Props., Inc. v. Column Fin., Inc., 2008 VT
113, 184 Vt. 494, 968 A.2d 286.  These two cases share certain underlying
facts, but do not involve the same legal issues.





[3] 
Defendant argues in his brief that there is “undisputed evidence that Column
transferred the original loan documents to Bank One Mortgage Warehouse” on
November 13, 2000.  According to Mr. Floyd’s testimony, this transaction
was based on a “custodial agreement between Bank One Trust Company and
[Column],” under which Bank One Mortgage Warehouse would “hold the documents
for [Column].”  The civil division, however, interpreted this as evidence
on the “irrelevant” issue of which entity had “physical possession of the
documents in accord with a custody agreement at the inception of the
loan.”  It is undisputed that Wells Fargo possessed originals of the loan
documents at trial.  That Bank One Mortgage Warehouse may have played a
role as keeper of the loan documents early in the securitization process casts
no doubt on Wells Fargo’s right to enforce the guaranty and raises no specter
of some unknown third party with substantive rights to the note and mortgage.