Aurora Loan Servs., LLC v. Kirkpatrick, No. S0498-09 CnC (Crawford, J., June 18, 2013)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                        CIVIL DIVISION
Chittenden Unit                                      Docket No.: S0498-09 CnC

Aurora Loan Services, LLC
        Plaintiff

        v.

Thomas M. Kirkpatrick, John Poratti
and Occupants residing at
20-22 Ward Street, Burlington, Vermont
        Defendants


DECISION ON DEFENDANT'S MOTION TO DISMISS
AND ON PLAINTIFF'S MOTION FOR SUBSTITUTION OF PARTIES

In a complaint dated April 16, 2009 and filed April 20, 2009, plaintiff Aurora Loan Services, LLC (Aurora) brought this foreclosure suit against defendant-mortgagor Thomas M. Kirkpatrick.[1] The court entered a final judgment and decree of foreclosure in January 2012. In June 2012, after a hearing on Mr. Kirkpatrick's motion for an emergency stay or extension of the redemption period, the court ordered mediation pursuant to V.R.C.P. 16.3.[2] Mediation occurred on August 30, 2012, and did not result in a settlement. On February 11, 2013, the court accepted the mediation report. This completed the mediation portion of this case. On February 27, 2013, the lender issued a notice of sale. On March 11, 2013, Mr. Kirkpatrick, who represents himself, filed a motion to dismiss and halted the sale until the motion could be resolved.[3]

FACTUAL AND PROCEDURAL BACKGROUND

When Aurora filed its complaint in 2009, it included a copy of the original note dated June 30, 2006 and payable to Aegis Wholesale Corporation in the amount of $285,000, as well as a copy of the mortgage deed naming Mortgage Electronic Registration Service, Inc. (MERS) as the mortgagee. The final page of the note—the allonge—shows two endorsements. The first is from Aegis Wholesale Corporation to Aegis Mortgage Corporation. The second is an

---

[1] Aurora also named as defendants John Poratti, a second mortgagee, and any occupants of the mortgaged premises.

[2] Defendant did not qualify for HAMP mediation because the property was not owner-occupied.

[3] As a preliminary matter, the court notes that, insofar as Mr. Kirkpatrick alleges that a lack of standing deprives the court of subject matter jurisdiction, his defense is technically raised pursuant to V.R.C.P. 60(b)(4) (void judgments) rather than Rule 12, since a final judgment has already been entered. See 5C Wright et al., Federal Practice and Procedure: Civil 3d § 1393 (WL updated Apr. 2013) (defense of lack of subject matter jurisdiction may be interposed as a motion for relief from a final judgment under Rule 60(b)(4)). Therefore, for the purposes of the factual background that follows, the court goes beyond the pleadings and considers the materials in the record presented by the parties.

endorsement in blank executed by Aegis Mortgage Corporation.  In its complaint, Aurora alleged that MERS, acting as nominee for Aegis Wholesale Corporation, assigned the note and mortgage to Aurora in April 2009.  However, Aurora did not specifically allege that the original note was in its possession and control, or that it was otherwise entitled to enforce the note pursuant to the Uniform Commercial Code.[4]  Because the version of Rule 80.1 that applied in April 2009 did not require Aurora to demonstrate its right to enforce the note at the pleading stage, the complaint did not make a clear allegation that Aurora was in possession of the note that Aegis Mortgage Corporation had endorsed in blank.[5]  However, Mr. Kirkpatrick never challenged Aurora's right to enforce the note until he filed the pending post-judgment motion.

In his motion to dismiss, Mr. Kirkpatrick argues, among other things, that Aurora lacked standing when the case was filed because Aurora has not alleged that it possessed the note at the time suit was filed.  He also contends that, in any event, Aurora no longer has standing because, since filing, Aurora has transferred its interest to another entity.  On April 19, 2013—after receiving an extension of time to respond to Mr. Kirkpatrick's motion to dismiss—Aurora filed a Rule 25 motion to substitute Wells Fargo Bank, National Association, Not in its Individual or Banking Capacity, but Solely as Trustee for SRMOF II 2011-1 Trust (Wells Fargo) to be substituted as a party plaintiff.  In support of its motion to substitute, Aurora attached the affidavit of Gina Gray, a Vice President for Wells Fargo, who states that Wells Fargo "is the holder of the original Promissory Note and has the original Promissory Note, with Allonge(s) attached thereto, and Mortgaged Deed referenced herein in its possession."  Gray Aff. ¶ 7, Apr. 2, 2013.  Aurora has also supplied copies of a series of assignments of the mortgage—each dated April 15, 2013—beginning with Aurora and ending with Wells Fargo.[6]

Aurora also filed an opposition to Mr. Kirkpatrick's motion to dismiss on May 3, 2013.  In support of its opposition, Aurora attached the affidavit of Cassandra Leet, a Vice President for Aurora, who states that, on April 14, 2009, Aurora received a collateral file from Bank of America—Merrill Lynch, and that the file included the June 30, 2006 note.  Leet Aff. ¶¶ 4–7, Apr. 18, 2013.  Ms. Leet states that Aurora had the promissory note in its possession on April 16, 2009.  *Id*. ¶ 10.  Additional factual background is set forth as necessary below.

---

[4] Such an allegation is required under the Rules that are currently in effect.  See V.R.C.P. 80.1(b)(1) (Cum. Supp. 2012) ("The plaintiff shall attach to the complaint copies of the original note and mortgage deed and proof of ownership thereof, including copies of all original endorsements and assignments of the note and mortgage deed. The plaintiff shall plead in its complaint that the originals are in the possession and control of the plaintiff or that the plaintiff is otherwise entitled to enforce the mortgage note pursuant to the Uniform Commercial Code.").  However, those requirements were not effective until July 1, 2010—well after the date on which Aurora filed its complaint.

[5] The complaint did allege that MERS had assigned the note to Aurora, although it is unclear how MERS could have assigned the note given that the documents in the record show that MERS never acquired anything more than bare legal title to the mortgage deed (and certainly no interest in the note).

[6] The court has some difficulty understanding how, on April 2, 2013, Gina Gray could testify that Wells Fargo possessed the note and the mortgage, when the documents indicate that Wells Fargo did not acquire any interest until April 15, 2013.  That observation ultimately has no impact on the outcome of the case.

2

ANALYSIS

## I. Aurora's "Standing"

Aurora asserts that the court should reject as untimely Mr. Kirpatrick's post-judgment attack on Aurora's standing. In support, Aurora cites *Citibank, N.A. v. Mumley*, No. S1087-09 CnC (Vt. Super. Ct. Sept. 1, 2011) (Toor, J.), available at http://www.vermontjudiciary.org/ 20112015%20Tcdecisioncvl/2011-9-12-2.pdf. In that case, the defendants moved to vacate a foreclosure judgment pursuant to Rule 60(b)(4) on the grounds that the bank was not entitled to enforce the Note at the time it brought its complaint, and therefore lacked standing, thereby depriving the court of jurisdiction and rendering the judgment void. The court concluded that, since final judgment had been entered, the defendants could not collaterally attack the judgment on jurisdictional grounds. For the reasons articulated in *Mumley*, the court holds that Mr. Kirkpatrick cannot collaterally attack the March 31, 2011 amended judgment.

Moreover, even if Rule 60(b) did authorize a challenge like the one that Mr. Kirkpatrick now raises, he would not prevail on the merits for the reasons described below. The court doubts that Mr. Kirkpatrick's challenge actually implicates the court's subject matter jurisdiction. His invocation of the standing doctrine is not necessarily correct for a case involving only private claims. As the leading treatise notes, when parties and courts use the language of the standing doctrine in such cases, they create "conceptual confusions [that] make unnecessary work" and may cause incorrect conclusions regarding a court's subject matter jurisdiction, the availability of substitution to correct a real party in interest defect, capacity, intervention, etc. 13A Wright et al., Federal Practice and Procedure: Jurisdiction 3d § 3531 (WL updated Apr. 2013). Nevertheless, parties in foreclosure cases have not infrequently labeled challenges to a bank's alleged right to enforce a note and mortgage as challenges to "standing." E.g., *Wells Fargo Bank Minnesota, N.A. v. Rouleau*, 2012 VT 19, ¶ 1, 191 Vt. 302; *U.S. Bank Nat'l Ass'n v. Kimball*, 2011 VT 81, ¶ 1, 190 Vt. 210.

Although Mr. Kirkpatrick relies heavily on *Kimball*, that case does not control the result here. Mr. Kirkpatrick attempts to fault Aurora for providing insufficient proof of the time that Aurora possessed the note and acquired the endorsements, noting the *Kimball* Court's apparent application of the standing doctrine and the fact that "standing is to be determined as of the commencement of suit." 2011 VT 81, ¶ 12 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992)); see also *id*. ¶ 14 (stating that the bank in that case "was required to show that *at the time the complaint was filed* it possessed the original note either made payable to bearer with a blank endorsement or made payable to order with an endorsement specifically to [the bank]" (emphasis added)); *id*. ¶ 17 ("The additional affidavit submitted with the motion to reconsider did nothing to establish the timing of the endorsement to U.S. Bank . . . ."). As described above, this court is skeptical about the application of the standing doctrine in a case that, like this one, involves only private claims.

In any case, the court notes that Aurora has come forward with evidence that it held the note at the time the complaint was filed. Moreover, Aurora would prevail on the argument that U.S. Bank attempted to make in *Kimball*. Namely, even without evidence that Aurora held the note on April 16, 2009, any such shortcoming should be overlooked because Wells Fargo—the

party Aurora seeks to have substituted as plaintiff—is the real party in interest. This is not a situation where the bank failed to come forward with evidence once the issue was raised. Cf. *id.* ¶¶ 18–19 (U.S Bank failed to timely supply the necessary documentation even though it had notice of the alleged "standing" deficiency from the start of the litigation). Here, as described above, Aurora came forward with documentation immediately after Mr. Kirkpatrick raised the "standing" issue in his motion to dismiss.

The court is satisfied that all of the elements demonstrating Wells Fargo's current interest in the note and the mortgage are present. There is now evidence that Aurora possessed the note at the time it filed the complaint, and there is also evidence that Wells Fargo is now in possession of the note.[7] Since the note is endorsed in blank, Wells Fargo is a "[p]erson entitled to enforce" the note under 9A V.S.A. § 3-301. As for the mortgage deed, it went from MERS to Aurora on April 1, 2009, and then, via the series of April 15, 2013 assignments, went to Wells Fargo. The note and the deed have therefore been reunited with Wells Fargo. The court will therefore deny Mr. Kirkpatrick's motion to dismiss to the extent it raises the issue of "standing," and will grant Aurora's motion for substitution.[8]

## II. Remaining issues in Mr. Kirkpatrick's motion to dismiss

Mr. Kirkpatrick makes two alternative arguments in his motion to dismiss. First, he argues that the plaintiff acted in bad faith during the mediation process by refusing to consider the current interest rate of the promissory note when it offered a proposed loan. Second, he argues that, following the mediation process and Mr. Kirkpatrick's acceptance of a loan modification, plaintiff improperly withdrew the offer. The court concludes that, even assuming these claims are cognizable under Rule 60(b), they are not meritorious for the reasons discussed below.

The following additional background is necessary to understand Mr. Kirkpatrick's arguments. The June 30, 2006 note that Mr. Kirkpatrick executed was an adjustable rate note.[9] Under the terms of the note, the initial rate was 7.875%, and the rate changed every six months, calculated as the six-month LIBOR rate plus 2.25%, rounded to the nearest one-eighth percentage point, and subject to certain limits on interest rate changes. At the time of the August 30, 2012 mediation, Mr. Kirkpatrick had recently received a notice of rate change dated July 2, 2012 and indicating an interest rate of 3.00%, effective with Mr. Kirkpatrick's August 1, 2012 payment.

---

[7] Because the evidence is that Wells Fargo is now in possession of the note, Wells Fargo does not need to prove that Aurora ever possessed it. See *Wells Fargo Bank Minnesota, N.A. v. Rouleau*, 2012 VT 19, ¶ 11, 191 Vt. 302 (holding that a plaintiff to whom a promissory note or mortgage was not originally issued need not prove chain of title to enforce a personal guaranty of those principal obligations).

[8] Even though final judgment has already been entered, substitution is still authorized because there is no time limit on moving to substitute under the provisions of Rule 25(c). 7C Wright et al., Federal Practice and Procedure: Civil 3d § 1958 (WL updated Apr. 2013).

[9] The note also provided that the first 120 monthly payments would be interest-only payments.

4

In an email sent on October 31, 2012, plaintiff offered Mr. Kirkpatrick a modification agreement, subject to a November 15, 2012 deadline to accept or reject the offer. See Opp'n Ex. 2.[10] Plaintiff outlined the terms of the offer as follows:

> This will be a full debt recapture plan. After capitalization of all arrearages, the new unpaid principal balance will be approximately $401,676.13. The interest rate will be reduced from 7.875 to 6.00%. There will be a six month trial period. The current principal, interest, tax and insurance payment is $2,089.03. The new principal, interest, tax and insurance payment will be $3,045.08. It will be necessary to escrow your taxes and insurance. The term of the loan will be 405 months. The first payment will be due December 1, 2012. Upon timely receipt of the six trial payments, a permanent loan modification will be generated for your execution.

*Id*. In an email reply sent on November 7, 2012, Mr. Kirkpatrick responded:

> I am willing to agree to Selene's[11] terms with one request. Since Selene is changing my interest rate to a FIXED rate and not an ARM where I could take advantage of the very low prime rate, I would like to [] at least be within the current mortgage rates of 4% for a fixed loan.
>
> Could you also give me more specifics on what the actual payment will be and what is included in the payment[?]
>
> I also would like to request that should I accept Selene's offer that my first payment start on January 01, 2013 as no decision or final numbers have been presented to me as of yet. I would like to have time to review Selene's offer. . . .

*Id*. Ex. 3. Plaintiff replied by email on November 14, 2012:

> The payment breakdown is as follows: $2315.57 PI, $657.51 Taxes, $72.00 Insurance, $3045.08 Total
>
> Selene has denied the request for a 4% rate and indicated that we need to set this up for payment 12/01/12. As indicated previously, the offer is open for acceptance up until the close of business tomorrow 11/15/2012.

*Id*. Ex. 4. Mr. Kirkpatrick wrote back on November 15, 2012, stating, in pertinent part:

> I will agree to the terms Selene has offered under the following conditions:

---

[10] To the extent the exchanges reproduced below might be considered "mediation communications" as defined in 12 V.S.A. § 5713(3) and subject to a privilege pursuant to 12 V.S.A. § 5715, it appears that all parties waive the privilege by asking the court to consider the content of the communications. See 12 V.S.A. § 5716 (waiver of privilege).

[11] The court understands that, at the time of the offer, Aurora had assigned the mortgage to Selene Finance, LP (Selene).

5

1. I am given ample time to seek legal counsel so I can understand the agreement and [its] legal obligations.

2. I receive a breakdown of the principal amount owed on the loan. (what charges, costs that have been added to final principal loan total) . . . .

[C]ould you see if Selene will extend the loan term to 40 years? This will lower my payment and help in saving for property maintenance.

*Id.* Neither party has presented evidence of further communications in this email chain.

## A. Bad faith

According to Mr. Kirkpatrick, plaintiff acted in bad faith during the mediation process because it refused to use the 3% rate in the notice of rate change he had received as the foundation for determining the new interest rate for a loan modification. Mot. to Dismiss at 4. Plaintiff maintains that the July 2, 2012 notice of rate change "had nothing to do with the mediation process and was simply a statement of the adjustment to his variable rate loan which would have taken place on August 1, 2012 had the loan been current." Opp'n at 3. The court agrees with plaintiff on this point. Moreover, the mediator expressly found that both sides made a good faith effort to mediate.

## B. Offer and acceptance

Mr. Kirkpatrick's second argument is that he did accept plaintiff's loan modification offer, and that plaintiff refused to accept his acceptance and instead withdrew the offer. There seems to be no dispute that Mr. Kirkpatrick's November 7 email was not an acceptance, since it conditioned acceptance on changed terms, including a lower rate and a different start date.[12] See *Okemo Mountain, Inc. v. Okemo Trailside Condos., Inc.*, 139 Vt. 433, 435 (1981) ("[A]n acceptance of an offer, to be good, must in every respect meet and correspond with the offer . . . . An acceptance on terms varying from those proposed is, in effect, a counter proposal, and is not binding until it is itself accepted." (quotation omitted)).

The court concludes that Mr. Kirkpatrick's November 15 email—sent on the day of plaintiff's deadline—was also not an acceptance. That email purported to agree to the 6% rate and the December 1, 2012 start date, but also included a request to extend the loan term as well as a "condition" that Mr. Kirkpatrick be given more time to review the offer. The "condition" that Mr. Kirkpatrick sought rendered his purported acceptance equivocal, and therefore plaintiff was not bound. See Restatement (Second) of Contracts § 57 ("Where notification is essential to acceptance by promise, the offeror is not bound by an acceptance in equivocal terms unless he reasonably understands it as an acceptance."). Plaintiff was "entitled to know in clear terms whether the offeree accepts his proposal." Restatement (Second) of Contracts § 57 cmt. b. Here, plaintiff required Mr. Kirkpatrick to accept no later than November 15, and Mr. Kirkpatrick's

---

[12] The November 7 email also sought more time to review the offer. In its November 14 reply, plaintiff reiterated that the offer was open for acceptance only until the close of business on November 15.

November 15 email did not supply clear terms that he was accepting the proposal. Since plaintiff was under no obligation to keep the offer open past November 15, and since there is no evidence of a clear acceptance, the court concludes that the parties never formed a contract to modify the loan.

## CONCLUSION

Aurora's motion for substitution (filed Apr. 19, 2013) is granted. Mr. Kirkpatrick's motion to dismiss (filed Mar. 11, 2013) is denied.

Dated at Burlington this ___ day of June 2013.

_____
Geoffrey Crawford,
Superior Court Judge

7