# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Deutsche Bank National Trust Co. v. Gilbert**, 2012 IL App (2d) 120164

---

| | |
|---|---|
| Appellate Court Caption | DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee Under the Pooling and Servicing Agreement Dated as of November 1, 2005, GSAMP Trust 2005-WMC-2, Plaintiff and Counterdefendant-Appellee, v. JAMES L. GILBERT, Defendant and Counterplaintiff-Appellant (Mortgage Electronic Registration Systems, Inc., WMC Mortgage Corp., and Unknown Owners, Defendants). |
| District & No. | Second District<br>Docket No. 2-12-0164 |
| Filed<br>Modified upon<br>denial of rehearing | September 25, 2012<br><br>December 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A judgment of foreclosure and the order confirming the foreclosure sale were vacated and the foreclosure action was dismissed on the ground that plaintiff bank did not own the mortgage at the time the action was filed, but plaintiff bank, as an assignee, was not liable on defendant's counterclaim alleging a violation of the Truth in Lending Act, since the alleged violation was not apparent on the face of the documents. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 08-CH-955; the Hon. Neal W. Cerne and the Hon. Robert G. Gibson, Judges, presiding. |
| Judgment | Affirmed in part and reversed in part. |

| Counsel on Appeal | Lloyd J. Brooks and Charles M. Howell, both of Brooks Law Firm, of Homewood, for appellant. |
| --- | --- |
| | Louis J. Manetti, Jr., of Codilis & Associates, P.C., of Burr Ridge, for appellee. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Justices McLaren and Zenoff concurred in the judgment and opinion. |

## OPINION

¶ 1    The plaintiff, Deutsche Bank National Trust Company, filed a foreclosure suit against the defendant, James L. Gilbert. Gilbert raised the affirmative defense that Deutsche Bank lacked standing at the time it filed the suit. Gilbert also filed a counterclaim alleging violations of the federal Truth in Lending Act (TILA) (15 U.S.C. § 1601 (2006)) and seeking damages. The parties filed cross-motions for summary judgment. The trial court initially found in favor of Gilbert on the issue of standing and dismissed the foreclosure. However, following Deutsche Bank's filing of a motion for reconsideration, the trial court reversed itself and granted summary judgment in favor of Deutsche Bank on all claims. Gilbert appeals, arguing that the trial court's initial decision was correct, and that he is also entitled to summary judgment in his favor on the counterclaim. For the following reasons, we reverse the judgment of foreclosure and dismiss the cause, and affirm the dismissal of the counterclaim.

¶ 2                                    BACKGROUND

¶ 3    On August 15, 2005, Gilbert entered into a home mortgage loan with WMC Mortgage Corporation. The loan was secured with a mortgage to Mortgage Electronic Registration Systems, Inc. (MERS). The loan had a variable interest rate that would fluctuate within certain parameters, generally being equal to 3.85% plus the London Inter-Bank Offered Rate (LIBOR), rounded to the nearest 0.125%. Gilbert asserts that, at the time of the loan, the LIBOR was 4.0817%,[1] and thus the initial interest rate on the loan would have been 8.000%. However, the note specifically provided for an initial interest rate of 6.990% during the first two years of the loan.

---

[1]Gilbert asserted this in his motion for summary judgment, citing a Wall Street Journal Web site. In its response to Gilbert's motion, Deutsche Bank neither conceded nor denied the truth of his assertions about the LIBOR at the time of the loan.

¶ 4    At the time of closing, WMC Mortgage provided Gilbert with copies of the note, the mortgage, and a document labeled "Variable Rate Mortgage Program Disclosure." This last document contained the following statement: "This ARM [Adjustable Rate Mortgage] loan may have a discount feature, and your initial interest rate may not be based on the index used to make later adjustments." The next sentence suggested that Gilbert "[a]sk about our current interest rate discount."

¶ 5    On March 10, 2008, Deutsche Bank filed a foreclosure action against Gilbert. In its complaint, it alleged that it was the current holder of the indebtedness. Copies of the note and the mortgage were attached to the complaint as exhibits.

¶ 6    On August 25, 2008, MERS (as nominee for WMC Mortgage) executed a document titled "Assignment of Mortgage" (Assignment). The Assignment stated that MERS, for certain consideration "the receipt of which is hereby acknowledged," "assigned and transferred" to Deutsche Bank, "as Trustee under the Pooling and Servicing Agreement dated as of November 1, 2005, GSyAMP Trust 2005-WMC2," all interests in Gilbert's mortgage. On September 12, 2008, Deutsche Bank filed an amended complaint, attaching the Assignment as an exhibit. Gilbert filed an answer, raising the affirmative defense of lack of standing on the ground that the Assignment showed that Deutsche Bank did not own the indebtedness when it originally filed the foreclosure. Gilbert also filed a counterclaim, in which he alleged that WMC Mortgage's disclosures to him at the time of closing violated TILA (15 U.S.C. § 1601 *et seq.* (2006)) by stating only that the initial interest rate might be discounted, although WMC Mortgage knew for certain that the rate was discounted. Gilbert asserted that Deutsche Bank was liable for these violations as the assignee of the mortgage.

¶ 7    In September 2009, both sides filed motions for summary judgment. Gilbert argued that he was entitled to a dismissal of the foreclosure (on the ground that Deutsche Bank lacked standing to bring the suit at the time the suit was filed) and judgment in his favor on his counterclaim. Deutsche Bank contended that it did have standing at the time it filed suit, because the Assignment simply memorialized an earlier transfer of interest. In support, it submitted an affidavit from William F. Loch, an employee of a company that serviced loans for Deutsche Bank, in which Loch averred that, based on his review of "the documents contained in the Gilbert loan file," MERS assigned its interest to Deutsche Bank on November 1, 2005. Loch did not state how he knew that this was when the assignment occurred, and he did not attach any documentary evidence that the assignment had occurred on this date. Deutsche Bank also argued that the counterclaim was defective on a number of bases, including that it was untimely and that the conditions necessary for Deutsche Bank to have assignee liability had not been met.

¶ 8    On November 23, 2009, after the motions had been fully briefed and orally argued, the trial court issued its initial ruling. As to the standing issue, it granted Gilbert's motion for summary judgment and dismissed the foreclosure, finding that Deutsche Bank was not the holder of the indebtedness at the time it filed the suit. The trial court noted Loch's averment that Deutsche Bank was the holder on the date of filing, but found it "to be a legal conclusion and just because he says it does not make it so." The trial court further noted that there was no document showing when the assignment took place. As to the counterclaim, the trial court denied both parties' motions for summary judgment because it believed that there were

issues of fact regarding whether the violations of TILA could be seen on the face of the loan documents and, thus, whether Deutsche Bank could be liable as an assignee.

¶ 9        Deutsche Bank filed a motion for reconsideration, arguing that the Assignment "clearly stated" that MERS assigned its interest to Deutsche Bank on November 1, 2005. In addition, Deutsche Bank argued, the counterclaim was time-barred, and Deutsche Bank was not subject to assignee liability because the alleged TILA violations were not apparent on the face of the loan documents. The motion was fully briefed, but on the hearing date, only the attorney for the bank showed up. The trial court listened to Deutsche Bank's arguments. It then granted reconsideration and reversed its earlier rulings, granting summary judgment for Deutsche Bank on all claims. Regarding the counterclaim, the trial court found that there was no assignee liability for the alleged TILA violations because the violations were not "really clear" from the face of the documents. In addition, it found that the counterclaim was time-barred.

¶ 10      The court entered a judgment of foreclosure, and the home was sold to Deutsche Bank, resulting in a deficiency of approximately $250,000. (Because the deficiency judgment was *in rem*, Gilbert was not personally liable for it.) In due course, the sale was approved. Gilbert filed a timely notice of appeal.

¶ 11                                  ANALYSIS

¶ 12      On appeal, Gilbert contends that the trial court erred in granting the motion for reconsideration and entering summary judgment in favor of Deutsche Bank on both the foreclosure and the counterclaim. We begin by examining the trial court's entry of judgment in Deutsche Bank's favor on the foreclosure.

¶ 13                      Standing to Bring the Foreclosure

¶ 14      The validity of Deutsche Bank's foreclosure action against Gilbert rests on one issue: whether Deutsche Bank had standing–that is, whether it owned the mortgage–on the date that it filed the foreclosure action. There are no disputes about the relevant facts, and the issue is thus a purely legal one that was appropriate for disposition by summary judgment. 735 ILCS 5/2-1005(c) (West 2008). We review the grant of summary judgment *de novo*. *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201 (2008).

¶ 15      "The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit." *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 262 (2004). A party's standing to sue must be determined as of the time the suit is filed. *Village of Kildeer v. Village of Lake Zurich*, 167 Ill. App. 3d 783, 786 (1988). "[A] party either has standing at the time the suit is brought or it does not." *Id.* An action to foreclose upon a mortgage may be filed by a mortgagee, *i.e.*, the holder of an indebtedness secured by a mortgage, or by an agent or successor of a mortgagee. See *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 406 Ill. App. 3d 1, 7 (2010); see also 735 ILCS 5/15-1208, 15-1504(a)(3)(N) (West 2008).

¶ 16      Typically, lack of standing to bring an action is an affirmative defense, and the burden

of proving the defense is on the party asserting it. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010). Gilbert argues that, in a foreclosure, the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.* (West 2008)) shifts the burden of pleading and proving standing to the plaintiff, because it requires the plaintiff to allege the "[c]apacity in which [the] plaintiff brings this foreclosure," *e.g.*, as "the legal holder of the indebtedness, a pledgee, an agent, the trustee under a trust deed or otherwise." 735 ILCS 5/15-1504(a)(3)(N) (West 2008). We need not resolve which party bears the burden of proof here, however, because even if Gilbert bore the burden of showing that Deutsche Bank lacked standing, he met that burden.

¶ 17    Gilbert raised the affirmative defense of lack of standing both in his answer and in his motion for summary judgment. To support his argument that on the date the foreclosure action was filed Deutsche Bank had no standing to sue him, Gilbert pointed to the note and the mortgage attached to the complaint, both of which identify the mortgagee as MERS–not Deutsche Bank. Moreover, the Assignment attached to the amended complaint was dated August 25, 2008, and Gilbert argued that this showed that MERS did not assign its interest in the mortgage until several months after the foreclosure action was filed. We find that this evidence met Gilbert's burden to show that Deutsche Bank lacked standing when the suit was filed, because the note and the mortgage identified the lender as WMC Mortgage and the holder of the mortgage as MERS. Deutsche Bank's name does not appear on either of these documents. Thus, the documents attached to the complaint contradict Deutsche Bank's allegation that it was "the mortgagee" and support Gilbert's argument that Deutsche Bank did not have an interest in the mortgage that would confer standing. As Gilbert made out a *prima facie* showing that Deutsche Bank lacked standing, the burden shifted to Deutsche Bank to refute this evidence or demonstrate a question of fact. *Triple R Development, LLC v. Golfview Apartments I, L.P.*, 2012 IL App (4th) 100956, ¶ 12.

¶ 18    Deutsche Bank attempted to rebut this apparent lack of standing by pointing to the Assignment and the Loch affidavit. However, these items lack evidentiary value. Before the trial court, Deutsche Bank argued that the language of the Assignment established that the transfer of the mortgage had occurred years earlier, on November 1, 2005. On appeal, however, Deutsche Bank wisely abandons that argument (which finds no support in the actual language of the Assignment), and now concedes that the Assignment "does not establish anything about when Plaintiff [Deutsche Bank] obtained its interest in the subject loan." We agree with this statement. Although the Assignment contains two dates–the date of the trust for which Deutsche Bank is a trustee, and the date on which the Assignment was executed and notarized–it does not explicitly state when the mortgage was assigned to Deutsche Bank. All that can be known about when the assignment took place is that it was no later than the date on which the Assignment was executed.

¶ 19    Instead, Deutsche Bank now relies solely on the Loch affidavit to refute the lack of standing shown by the note and the mortgage. Deutsche Bank points to Loch's statement that the assignment occurred on November 1, 2005, and contends that his statement must be taken as true in the absence of contrary evidence. This legal principle applies only to admissible evidence, however. *Complete Conference Coordinators, Inc. v. Kumon North America, Inc.*, 394 Ill. App. 3d 105, 108 (2009) (only admissible evidence may be considered

in support of or opposition to summary judgment). Loch's statement about the date of the assignment was not admissible, because it was unsupported by any foundation.

¶ 20   The use of affidavits on motions for summary judgment is governed by Illinois Supreme Court Rule 191(a) (eff. July 1, 2002). Under that rule, affidavits must set out the facts on which the affiant's claims are based, and attach all documents upon which the affiant relies. Loch, however, did not state how he knew that the assignment took place on November 1, 2005, and he failed to attach any documents supporting his assertion. (As we noted, the Assignment itself provides no support for Loch's assertion.) Accordingly, Loch's statement about the date of the assignment does not comply with Rule 191(a) and may be disregarded. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 132 (1992) (unsupported conclusions and opinions were insufficient to raise an issue of fact); *Madden v. Paschen/S.N. Nielson, Inc.*, 395 Ill. App. 3d 362, 388 (2009) (legal conclusions and unsupported statements were properly stricken). Disregarding Loch's unsupported statement, the sole evidence that Deutsche Bank ever became the holder of the indebtedness was the Assignment and, as Deutsche Bank concedes, that document does not establish *when* Deutsche Bank became the holder.

¶ 21   Deutsche Bank argues that, because lack of standing is an affirmative defense, Gilbert bore the burden of proving that it did not have standing on the date that Deutsche Bank filed the foreclosure. This is the general rule (*U.S. Bank National Ass'n v. Sauer*, 392 Ill. App. 3d 942, 946 (2009)), and, as we have noted, we apply it here. However, Gilbert's documentary evidence that Deutsche Bank did not have an interest in the mortgage (the mortgage and the note, and an assignment executed after the date of filing, which did not show that the assignment occurred before the date of filing) constituted *prima facie* evidence of lack of standing. " 'A "*prima facie*" defense is sufficient at law unless and until rebutted by other evidence.' " *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 366 (2008) (quoting *Darling & Co. v. Pollution Control Board*, 28 Ill. App. 3d 258, 264 (1975)). Deutsche Bank also argues that its standing to bring the action was established by its complaint, which alleged that it was the "mortgagee." See *Barnes*, 406 Ill. App. 3d at 6 (a plaintiff sufficiently pleads a cause of action for foreclosure if it alleges that it holds the mortgage and attaches a copy of the note and the mortgage). However, the attached note and mortgage listed MERS as the mortgagee, and thus they contradicted Deutsche Bank's allegation that it was the mortgagee. *Burton v. Airborne Express, Inc.*, 367 Ill. App. 3d 1026, 1034 (2006) ("Exhibits are a part of the complaint to which they are attached," and facts contained within an exhibit serve to negate inconsistent allegations contained within the body of the complaint.). Moreover, it is well established that a party may not rely on the allegations of its pleadings to contradict evidence produced by the movant that would entitle it to judgment. *Triple R Development*, 2012 IL App (4th) 100956, ¶ 12. As Deutsche Bank produced no competent evidence rebutting Gilbert's *prima facie* showing that the bank lacked standing at the time of filing, Gilbert was entitled to summary judgment in his favor on this issue.

¶ 22   In a last-ditch effort to avoid this result, Deutsche Bank argues that section 2-407 of the Code of Civil Procedure (Code) (735 ILCS 5/2-407 (West 2008)), which allows the joinder of necessary parties after the commencement of a suit, protects against the dismissal of its

complaint for lack of standing. Deutsche Bank argues that its amendment of the complaint, which attached the recently executed Assignment, acted as a "joinder" of itself in a new capacity–as the now-undisputed owner of the loan. Not surprisingly, Deutsche Bank is unable to point to any case law supporting such a novel application of section 2-407 to cure a plaintiff's lack of standing. To the contrary, standing must exist when the suit is filed. *Village of Kildeer*, 167 Ill. App. 3d at 786. As Deutsche Bank lacked standing at the time of filing, the foreclosure action was defective and could not be maintained. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 22 (2004) (a plaintiff's lack of standing negates his cause of action and requires dismissal of the proceedings). Deutsche Bank could not cure this defect by "joining" the suit as a proper party at a later date.

¶ 23    In summary, Gilbert was entitled to judgment in his favor on the foreclosure, because Deutsche Bank failed to rebut Gilbert's *prima facie* case that it lacked standing to bring that foreclosure. *Bayview Loan Servicing, L.L.C. v. Nelson*, 382 Ill. App. 2d 1184, 1186 (2008). We note that, although there is little case law on this specific issue in Illinois, several other states have taken an approach similar to our holding here. "It is a fundamental precept of the law to expect a foreclosing party to actually be in possession of its claimed interest in the note, and to have the proper supporting documentation on hand when filing suit, *** so that the defendant is duly apprised of the rights of the plaintiff." *U.S. Bank National Ass'n v. Baber*, 2012 OK 55, ¶ 6, 280 P.2d 956; see also *Wells Fargo Bank Minnesota, N.A. v. Rouleau*, 2012 VT 19, ¶ 16, 46 A.3d 905; *Davenport v. HSBC Bank USA*, 739 N.W.2d 383, 385 (Mich. Ct. App. 2007) (foreclosure must be vacated where bank "did not yet own the indebtedness that it sought to foreclose"). We see no flaws in this reasoning.

¶ 24    Moreover, our holding is far from extreme. Indeed, our sister courts in New York have gone farther, holding repeatedly that, unless an assignment of a mortgage is executed prior to the date on which the foreclosure action is filed, the assignee lacks standing to bring the foreclosure and the action should be dismissed, even where the assignment is executed only a few months after the action is filed. See *Wells Fargo Bank, N.A. v. Marchione*, 887 N.Y.S.2d 615, 619 (N.Y. App. Div. 2009); *LaSalle Bank National Ass'n v. Ahearn*, 875 N.Y.S.2d 595, 597 (N.Y. App. Div. 2009). We recognize that, in Illinois, an assignment can validly document a transfer that occurred prior to the date the assignment was executed. Thus, we do not adopt New York's rule here. We merely hold that where, as here, a foreclosure plaintiff fails to produce competent evidence rebutting the defendant's showing that the plaintiff lacked standing at the time the foreclosure action was filed, the action must be dismissed. Accordingly, the order granting Deutsche Bank's motion for reconsideration and entering judgment in favor of Deutsche Bank must be reversed, the judgment of foreclosure and the order confirming the sale must be vacated, and the foreclosure must be dismissed.

¶ 25            The Truth in Lending Act Counterclaim: Assignee Liability

¶ 26    We turn to the second issue on appeal: whether the trial court properly granted summary judgment in Deutsche Bank's favor on Gilbert's counterclaim under TILA. As mentioned, the trial court found that Deutsche Bank was not liable as an assignee of the loan, because

the alleged violation was not apparent on the face of the documents. The court also found that the counterclaim was untimely. Because we conclude that the first of these holdings was correct, we do not reach the latter holding or Deutsche Bank's other arguments.

¶ 27 "The purpose of TILA is 'to assure a meaningful disclosure of credit terms.' " *Jackson v. South Holland Dodge, Inc.*, 197 Ill. 2d 39, 47 (2001) (quoting 15 U.S.C. § 1601(a) (1994)). "Consequently, pursuant to TILA creditors are required to provide borrowers with 'clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest and the borrower's rights.' " *U.S. Bank National Ass'n v. Manzo*, 2011 IL App (1st) 103115, ¶ 18 (quoting *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412 (1998)). Under TILA, the lender or creditor is the entity primarily responsible for any defects in the disclosures required by TILA. *Jackson*, 197 Ill. 2d at 48.

¶ 28 Where, as here, the loan has been assigned, the assignee may also be liable for defects in the required disclosures, but only if the TILA violation "is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(e)(1)(A) (2006). This standard can be met in two ways: (1) if "the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement"; or (2) if "the disclosure statement does not use the terms or format required." 15 U.S.C. § 1641(e)(2) (2006).[2]

¶ 29 Gilbert alleges that the disclosures he received in connection with his mortgage loan violated section 226.19(b) of Regulation Z (12 C.F.R. § 226.19(b) (2009)), the regulation that spells out how TILA is to be implemented. Section 226.19(b)(2)(v) states, in pertinent part, that if the loan has an introductory interest rate that is lower than the annual percentage rate of the loan as a whole (a discounted rate), the lender must disclose "[t]he fact that the interest rate will be discounted." 12 C.F.R. § 226.19(b)(2)(v) (2009). Gilbert notes that his loan had such a discounted rate, because the note provided that the loan would have a 6.99% interest rate during the first two years, but thereafter the interest rate would be equal to the LIBOR plus 3.85%. Gilbert states that, at the time of the loan, the LIBOR plus 3.85% yielded an interest rate of approximately 8%, and therefore the introductory rate of 6.99% was a discounted rate. He argues that, because the lender knew at the time of the closing that the initial interest rate was lower than the rate that would otherwise apply, the lender had an obligation under TILA to state that fact unequivocally. Instead, the lender disclosed only that the loan "may" have a "discount feature." Gilbert cites several federal district court decisions for the principle that using "may" instead of "will" in a disclosure of credit terms is a violation of TILA when the lender knows for certain that the relevant circumstances that trigger the disclosure exist. *Foster v. SCME Mortgage Bankers, Inc.*, No. CIV. 2:10-518 WBS, 2011 WL 1363802, at *5 (E.D. Cal. Apr. 11, 2011); *Brooks v. ComUnity Lending, Inc.*, No. C 07-4501 JF, 2010 WL 2680265, at *6-7 (N.D. Cal. July 6, 2010); *Rush v.*

---

[2]We note that section 1641(e), which defines the meaning of "apparent on the face of the disclosure statement" for loans secured by real property (*e.g.*, mortgages), is broader than the corresponding definition in section 1641(a), which contains the definition for other consumer credit transactions. See *Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 199-200 (3d Cir. 2000) (citing 15 U.S.C. § 1641(a), (e)).

*American Home Mortgage, Inc.*, No. WMN-07-CV-0854, 2009 WL 4728971, at *10-11 (D. Md. Dec. 3, 2009); *Velazquez v. GMAC Mortgage Corp.*, 605 F. Supp. 2d 1049, 1967 (C.D. Cal. 2008); *Plascencia v. Lending 1st Mortgage*, No. C 07-4485 CW, 2008 WL 1902698, at *5 (N.D. Cal. Apr. 28, 2008); *Andrews v. Chevy Chase Bank, FSB*, 240 F.R.D. 612, 619 (E.D. Wis. 2007), *rev'd on other grounds*, 545 F.3d 570 (7th Cir. 2008).

¶ 30    We do not doubt that, generally speaking, Gilbert is correct that a lender violates TILA if it uses "may" instead of "will" when it knows that the triggering circumstances in fact exist. Nevertheless, almost all of the cases that Gilbert cites are inapposite here because they involve either lenders or assignees that were alleged to have colluded with the original lenders in such a manner that their knowledge of the violations could be presumed. The sole exception is *Foster*, in which the court held that a complaint stated a viable TILA claim against an assignee. There, however, the fact that the initial interest rate was discounted was "apparent on the face of" the documents because the introductory rate was listed as 2.2%, which was inescapably lower than the later interest rate of the LIBOR plus 3.325%. *Foster*, 2011 WL 1363802, at *5 (since 2.2 is less than 3.325, it was mathematically certain that the initial rate represented a discount). Here, by contrast, it was not mathematically impossible for the initial rate of 6.99% to equal or exceed the later interest rate of the LIBOR plus 3.85%. In that case, the initial 6.99% rate would not be a discounted rate.

¶ 31    As noted above, regardless of the *lender's* knowledge about the language it ought to use, an *assignee* is not liable under TILA unless the alleged TILA violation appears on the face of the relevant documents. 15 U.S.C. § 1641(e)(1)(A) (2006). Thus, the relevant question in evaluating the viability of Gilbert's counterclaim is not whether the lender would be liable, but whether–simply by looking at the face of the note and the various disclosures given to Gilbert–a reasonable person in Deutsche Bank's shoes should have realized that the loan inescapably included a discounted rate, and that the lender had therefore violated TILA by stating only that the loan "may" include such a rate.

¶ 32    In considering this question, we note that a violation is not "apparent on the face" of the documents if a person would have to have outside knowledge in order to know of the violation. See *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 709 (11th Cir. 1998) (in determining assignee liability under TILA, courts may not "resort to evidence or documents extraneous to" the documents identified in the statute); *Ramadan*, 229 F.3d at 198; *Jackson*, 197 Ill. 2d at 49. Here, a person reviewing the documents would have to know the LIBOR on the date of the closing in order to know whether the initial 6.99% interest rate was lower than the rate that would otherwise have applied. Neither the note nor any of the disclosure statements contained any information regarding the LIBOR on the relevant date. Accordingly, Deutsche Bank cannot be liable under TILA, because the lender's alleged violation of TILA was not apparent on the face of the documents. The trial court did not err in granting summary judgment in favor of Deutsche Bank on Gilbert's counterclaim.


¶ 33                                    CONCLUSION

¶ 34    We affirm the judgment of the circuit court of Du Page County granting summary judgment in favor of Deutsche Bank on Gilbert's counterclaim under the Truth in Lending

Act. However, the trial court erred in reconsidering its initial determination that the foreclosure claim must be dismissed because Deutsche Bank lacked standing at the time of filing. Accordingly, we reverse the judgment of foreclosure, vacate the order approving sale, and dismiss the foreclosure.

¶ 35     Affirmed in part and reversed in part.