NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 60

No. 24-AP-359

| | |
|---|---|
| The Bank of New York Mellon | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Civil Division |
| | |
| Daniel T. Quinn | October Term, 2025 |

H. Dickson Corbett, J.

Sheldon M. Katz of Brock & Scott, PLLC, Plainville, Massachusetts, for Plaintiff-Appellant.

Daniel T. Quinn, Pro Se, Woodstock, Defendant-Appellee.

Grace B. Pazdan and Dylan Shapiro (Legal Intern), Vermont Legal Aid, Montpelier, and
  Geoff Walsh, National Consumer Law Center, Boston, Massachusetts, for Amici Curiae
  Vermont Legal Aid, Inc. and National Consumer Law Center.


PRESENT: Reiber, C.J., and Arms, Shafritz, and Richardson, Supr. JJ., and Johnson, J. (Ret.),
         Specially Assigned


¶ 1.    **REIBER, C.J.**   In this foreclosure case, plaintiff, the Bank of New York Mellon, appeals a civil division order concluding plaintiff lacked standing and entering judgment for defendant Daniel Quinn. On appeal, plaintiff seeks to overrule or limit U.S. Bank National Ass'n v. Kimball, 2011 VT 81, ¶ 13, 190 Vt. 210, 27 A.3d 1087, which held that "[t]o foreclose a mortgage, a plaintiff must demonstrate that it has a right to enforce the note, and without such ownership, the plaintiff lacks standing." Plaintiff alleges that Kimball misconstrued the concept of standing and that the failure to establish a right to enforce a note at the time the complaint is

filed may later be cured. Alternatively, plaintiff argues that <u>Kimball</u>, which was decided while this case was pending, should not apply. Finally, plaintiff seeks a declaration that the judgment was without prejudice to refiling. We decline to overrule <u>Kimball</u> or limit its application and affirm without speculating on the preclusion consequences of this decision in future actions between these parties.

## I. Factual and Procedural History

¶ 2.     In August 2007, defendant borrowed $365,000 from Countrywide Home Loans, Inc. The note was secured by a mortgage on defendant's residential property in Woodstock, Vermont, to Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for lender Countrywide. The real property was identified in the mortgage deed, which was recorded in the town land records.

¶ 3.     In October 2009, plaintiff filed this foreclosure action, asserting that defendant had defaulted on the note. The complaint alleged that plaintiff was the holder of the note, and that MERS had assigned the mortgage to plaintiff. Attached to the complaint was a copy of the mortgage assignment, and a copy of the note made out to the order of the lender Countrywide without any indorsements.[1]

¶ 4.     The case encountered many delays over the ensuing years, including a stay for mediation, a bankruptcy stay, and the filing of numerous motions. See <u>Bank of N.Y. Mellon v. Quinn</u>, No. 22-AP-049, 2022 WL 16848166, at *1 (Vt. Nov. 10, 2022) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo22-049.pdf (outlining case's "unusually long and complicated procedural path"). The most-relevant procedural facts are

---

[1] In 2010, Vermont Rule of Civil Procedure 80.1(b)(1) was amended by legislative action to require the plaintiff in foreclosure actions to attach copies of the original note and mortgage deed and to plead that the plaintiff was entitled to enforce the note under the Uniform Commercial Code. See 2009, No. 132 (Adj. Sess.), § 1. These pleading requirements are separate from standing, which is at issue in this case.

recounted here. In January 2010, plaintiff moved for summary judgment. The accompanying statement of undisputed facts asserted that plaintiff was the holder of defendant's note and that the mortgage had been transferred by assignment. Defendant responded, and among other things, argued that plaintiff had failed to show that it was the holder of the note and therefore had not established its standing to sue. In 2010, the civil division denied plaintiff's motion for summary judgment, concluding that under the Uniform Commercial Code (UCC), plaintiff had "not yet established its standing to assert the claim for breach of the promissory note." See 9A V.S.A. § 3-301 (delineating persons entitled to enforce note). Although plaintiff asserted it possessed the original note indorsed in blank, the court concluded that this remained a disputed fact and therefore denied summary judgment. The court indicated that it would not consider any further dispositive motions.

¶ 5. In 2012, plaintiff again moved for summary judgment, alleging in its statement of undisputed facts that its attorney possessed the note on its behalf. Plaintiff attached a certification of its counsel, attesting that a representative of plaintiff had personally reviewed plaintiff's documents and that all documents filed in support of the foreclosure were "complete and accurate." In 2013, the court granted plaintiff's renewed motion for summary judgment based on the statement of undisputed facts, which indicated that plaintiff was in possession of the original note. The court later vacated its summary-judgment decision, concluding that granting summary judgment contradicted the 2010 ruling that no dispositive motions would be considered and that the affidavit in support of summary judgment was insufficient because it was not based on personal knowledge. After a hearing on the merits, the court entered judgment for defendant, concluding plaintiff did not meet its burden of proof. On appeal, this Court reversed and remanded for a new trial, concluding that the court had erred in excluding certain exhibits offered by plaintiff. Bank of N.Y. Mellon, No. 22-AP-049, 2022 WL 16848166, at *3.

3

¶ 6.    Following remand, the court held a hearing on the merits in May 2024.  At trial, plaintiff produced the original note with an undated indorsement in blank by the executive vice president of the lender.  This differed from the copy of the note attached to the complaint that was made to the lender and lacked any indorsement.  Plaintiff also presented evidence showing that defendant breached the repayment obligation, and that the lender provided notice of its intent to accelerate the loan if defendant did not meet certain conditions.  Plaintiff introduced a series of bailee letters identifying the location of the note at various times, but the chain of custody did not reach back to October 2009 when plaintiff filed the complaint.  The court found that plaintiff had produced the original note with defendant's "wet" signature and therefore demonstrated that it was currently a holder of the note and entitled to enforce it.  The court also found that plaintiff had proven that defendant defaulted on his obligations under the note.  The court concluded, however, that under Kimball, plaintiff was required to demonstrate a right to enforce the note at the time the complaint was filed, and plaintiff had not established the date of the indorsement.  The court provided a lengthy commentary on Kimball, expressing its view that Kimball misconstrued the concept of standing and that plaintiff's failure to demonstrate that it could enforce the note at the time suit was filed was an error that could be cured under the "real party in interest" rule. Nonetheless, because the court remained bound by this Court's precedent, the court held that plaintiff lacked standing to bring the foreclosure action when it filed suit and subsequently entered judgment for defendant.

¶ 7.    Plaintiff filed a post-judgment motion seeking to amend the judgment order to indicate that it was without prejudice because it was based on a jurisdictional determination and not a decision on the merits.  The trial court denied the motion, indicating that the preclusive consequences of its decision would be best determined in any subsequent proceeding.

4

## II. Standing

¶ 8.    On appeal, plaintiff first argues that the court erred in entering judgment for defendant based on standing.[2]  Plaintiff contends that its inability to prove that it was a holder of the note when it filed suit does not equate to a lack of standing.  "Whether a plaintiff has standing is a legal question, which we review with no deference to the trial court."  Taylor v. Town of Cabot, 2017 VT 92, ¶ 9, 205 Vt. 586, 178 A.3d 313.

¶ 9.    As noted above, plaintiff's view of standing would require us to overrule U.S. Bank National Ass'n v. Kimball, in which this Court held that a plaintiff in a foreclosure action "must demonstrate that it has a right to enforce the note" at the time the complaint is filed to have standing.  2011 VT 81, ¶¶ 13, 16.  Kimball explained that the purpose of standing is to preclude those without an interest in the controversy from bringing suit.  Id. ¶ 12.  To show that a foreclosure plaintiff has a case or controversy to present to the court, it must demonstrate that it is entitled to enforce the note under the UCC.[3]  A person becomes a holder of a note when the note is issued or later negotiated to that person.  9A V.S.A. § 3-201(a).  If a note is payable to order, it is a blank indorsement, and negotiation is complete by transfer and indorsement of the instrument.  Id. § 3-201(b).

¶ 10.    Here, in its complaint, plaintiff asserted that it was a holder of the note.  The copy of the note attached to the complaint, however, was made payable to the original lender and therefore did not give plaintiff the rights of a holder.  Although plaintiff later produced a note with

---

[2]  Defendant filed numerous motions during the pendency of the appeal seeking, among other things, to dismiss the appeal.  Defendant has not demonstrated any basis to dismiss the appeal, and those motions are denied.  Plaintiff also moved to strike a portion of one of defendant's pleadings.  That motion is also denied.

[3]  Because the mortgage is incidental to and follows the note, the ability to foreclose depends on the right to enforce the debt obligation secured by the note.  See Huntington v. McCarty, 174 Vt. 69, 70, 807 A.2d 950, 952 (2002) (explaining that "the mortgage is an incident to the note").

5

an indorsement in blank, it was undated and therefore on its own failed to establish plaintiff's right to enforce the note when it filed suit. See Wells Fargo Bank Minn., N.A. v. Rouleau, 2012 VT 19, ¶ 13, 191 Vt. 302, 46 A.3d 905 (explaining that to enforce promissory note person must be in possession at time enforcement action is filed and therefore at that time instrument must be payable to person or indorsed in blank).

¶ 11. Plaintiff argues that this failure should not result in dismissal because standing is not the correct legal framework to determine whether a foreclosure plaintiff is entitled to enforce a note and foreclose on a mortgage. Plaintiff relies on the trial court's commentary, which posited that standing is about separation of powers and should not apply to a private foreclosure matter that involves legal concepts predating the development of modern standing. The trial court proposed that Vermont Rule of Civil Procedure 17 regarding substitution of parties provides the proper procedural mechanism for ensuring that a plaintiff in a private foreclosure is the real party in interest. Therefore, the trial court surmised that if a particular plaintiff is not entitled to enforce the note, then the correct plaintiff can be substituted as a party, rather than having the entire case dismissed for lack of standing.

¶ 12. Plaintiff echoes the trial court's criticism of Kimball and argues that the concept of "standing" is something that should not apply in this type of private dispute. Plaintiff argues that standing is an element of the constitutional case-or-controversy requirement that is "fundamentally rooted in respect for the separation of powers of the independent branches of government." Hinesburg Sand & Gravel Co. v. State, 166 Vt. 337, 341, 693 A.2d 1045, 1048 (1997). According to plaintiff, because standing is about separation of powers, it should be applied solely in cases against government entities and not in private causes of action where the relevant inquiry should be limited to whether the identified plaintiff is the real party in interest. See 13A C. Wright & A. Miller, Federal Practice and Procedure § 3531 (3d ed. 2025) (noting that standing is frequently confused with real party in interest and focus on standing "may lead a court to refuse application

6

of the ameliorating rules that enable substitution of the real party in interest when the wrong plaintiff filed the action").

¶ 13. We decline to overrule Kimball or alter the standing requirements for a mortgage foreclosure case. To be sure, modern "standing" jurisprudence, especially in the federal courts, has been most closely linked to proceedings by individuals against public agencies. Scholars have recounted that standing began appearing in the 1940s and was a concept that originated from several convergent factors, including Congress's conferral of federal-question jurisdiction on federal courts, the growth of the administrative state, the promulgation of the Federal Rules of Civil Procedure, and the general rise in federal courts being asked to grant remedies against the government. See T. Schmidt, Standing Between Private Parties, 2024 Wis. L. Rev. 1, 14, 43 (explaining consensus of early scholars on topic of justiciability that "doctrine of standing served primarily as a tool to limit judicial power in confrontations with the other branches, not to limit the sorts of cases that Congress (or the states) can authorize against private parties"). The U.S. Supreme Court eventually established the contemporary test for standing under which a plaintiff must show "(1) injury in fact, (2) causation, and (3) redressability." Hinesburg, 166 Vt. at 341, 693 A.2d at 1048 (citing Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jack., Fla., 508 U.S. 656, 663 (1993)). This Court has similarly concluded that the power conferred to it by the Vermont Constitution is "the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction." In re Constitutionality of House Bill 88, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) (quotation omitted). Therefore, a plaintiff "must present a real—not merely theoretical—controversy involving the threat of actual injury to a protected legal interest rather than merely speculating about the impact of some generalized grievance." In re Faignant, 2019 VT 29, ¶ 8, 210 Vt. 661, 212 A.3d 623 (mem.) (quotation omitted); see Ferry v. City of Montpelier, 2023 VT 4, ¶¶ 11, 18-21, 217 Vt. 450, 296 A.3d 749

7

(evaluating whether individuals asserting constitutional right had injury sufficient to satisfy case-or-controversy requirement of Vermont Constitution rooted in respect for separation of powers).

¶ 14. Standing in this state has not, however, been limited to public-law situations, and even in suits between private individuals, this Court has required the person bringing suit to show an injury sufficient to invoke the jurisdiction of Vermont courts to satisfy the Court's subject-matter jurisdiction over actual cases or controversies.[4] See, e.g., Unifund CCR Partners v. Zimmer, 2016 VT 33, ¶ 19, 201 Vt. 474, 144 A.3d 1045 (explaining that to bring suit plaintiff must have standing, defined as having "suffered a particular injury that is attributable to the defendant and that can be redressed by a court of law" (quotation omitted)); Dernier v. Mortg. Network, Inc., 2013 VT 96, ¶ 27, 195 Vt. 113, 87 A.3d 465 (analyzing whether plaintiffs had standing to challenge whether assignments violated pooling and servicing agreement if not parties to that agreement); Bischoff v. Bletz, 2008 VT 16, ¶ 16, 183 Vt. 235, 949 A.2d 420 (concluding that plaintiffs lacked standing to seek declaratory relief because "they cannot show that they suffered any personal injury fairly traceable" to defendant's conduct since they were strangers to contract they sought to enforce); Ihinger v. Ihinger, 2003 VT 38, ¶ 5, 175 Vt. 520, 824 A.2d 601 (mem.) (holding children lacked standing to appeal decision regarding custody because they were not parties to divorce action). These decisions have focused on whether the person invoking the court's jurisdiction had a legal interest in the proceeding.

---

[4] It is not necessary to decide the scope of standing for purposes of federal courts, but we note that the U.S. Supreme Court has resolved cases between private parties on standing grounds where the plaintiffs could not demonstrate any interest in the action. See, e.g., Thole v. U.S. Bank N.A., 590 U.S. 538, 541 (2020) (concluding that plaintiffs had no standing to sue U.S. Bank's retirement plan for alleged violations of duties of loyalty and prudence because plaintiffs' benefits would be unchanged by violations due to their defined-benefit plan, and therefore plaintiffs had "no concrete stake in this lawsuit"). In addition, as amici highlight, the concept of standing has been incorporated into federal cases on foreclosure to require that a plaintiff in a mortgage foreclosure action must show that when the suit is commenced it was either the holder or assignee of the note. E. Sav. Bank, FSB v. Thompson, 631 F. App'x 13, 15 (2d Cir. 2015).

¶ 15. Kimball reflected this jurisprudence, requiring that a foreclosing plaintiff demonstrate it had an injury fairly traceable to the defendant by showing an ability to enforce the note at the time the suit was filed. Kimball, 2011 VT 81, ¶ 13; see Rouleau, 2012 VT 19, ¶ 13 (reaffirming Kimball and outlining standing requirement for foreclosure action). Kimball explained that it was not an unreasonable burden to require the foreclosing party "to actually be in possession of its claimed interest in the note, and have the proper supporting documentation in hand when filing suit." Id. ¶ 20.

¶ 16. Kimball's view of standing was certainly not unique, and other states similarly require foreclosure plaintiffs to establish their standing—meaning their legal right to sue—at the outset of the litigation by demonstrating they are entitled to enforce the note. See, e.g., U.S. Bank, N.A. v. Ugrin, 91 A.3d 924, 930 (Conn. App. Ct. 2014) ("Generally, in order to have standing to bring a foreclosure action the plaintiff must, at the time the action is commenced, be entitled to enforce the promissory note that is secured by the property."); McLean v. JP Morgan Chase Bank Nat'l Ass'n, 79 So.3d 170, 173 (Fla. Dist. Ct. App. 2012) (per curiam on motion for clarification) (providing that party seeking foreclosure must demonstrate "standing to foreclose" by showing plaintiff's status as note holder, and standing must be established when complaint is filed); Bank of Am., N.A. v. Reyes-Toledo, 390 P.3d 1248, 1255 (Haw. 2017) (holding "a foreclosing plaintiff does not have standing to foreclose on mortgaged property unless the plaintiff was entitled to enforce the note that has been defaulted on," and "standing must be present at the commencement of the case"); FV-I, Inc. for Morgan Stanley Mortg. Cap. Holdings, LLC v. Kallevig, 392 P.3d 1248, 1256 (Kan. 2017) (holding that "foreclosing plaintiff must show that it has been injured by establishing that it is entitled to enforce the note"); Mortg. Elec. Registration Sys., Inc. v. Saunders, 2010 ME 79, ¶ 15, 2 A.3d 289 ("Without possession of or any interest in the note, MERS lacked standing to institute foreclosure proceedings and could not invoke the jurisdiction of our trial courts."); Deutsche Bank Nat'l Tr. Co. v. Johnston, 2016-NMSC-013, ¶¶ 20-22, 369 P.3d 1046

9

(holding that standing to enforce note must be established at time of filing foreclosure action); Bank of N.Y. Mellon v. Grund, 2015-Ohio-466, ¶ 23, 27 N.E.3d 555 (noting that, in mortgage foreclosure action, mortgage lender must establish interest in promissory note or mortgage "as of the filing of the complaint"); Deutsche Bank Nat'l Tr. v. Brumbaugh, 2012 OK 3, ¶ 11, 270 P.3d 151 ("To commence a foreclosure action . . . a plaintiff must demonstrate it has a right to enforce the note and, absent a showing of ownership, the plaintiff lacks standing."). As those cases explain, requiring a foreclosing plaintiff to demonstrate a right to enforce the note at the time the complaint is filed is vital because "it protects homeowners against double liability." Johnston, 2016-NMSC-013, ¶ 22. If entities were able to bring suit without a concurrent right to enforce a note, the borrower might be subject to multiple suits for the same debt.

¶ 17. This Court does not "lightly overturn recent precedent," and plaintiff has not demonstrated why a change in our law is warranted here. In re Barber, 2018 VT 78, ¶ 2 n.1, 208 Vt. 77, 195 A.3d 364 (quoting O'Connor v. City of Rutland, 172 Vt. 570, 570, 772 A.2d 551, 552 (2001) (mem.)) (noting Court's reluctance to overrule precedent and declining to overrule recent decision). This Court will modify existing law "only when plainly justified by evolving common standards." Demag v. Better Power Equip., Inc., 2014 VT 78, ¶ 14, 197 Vt. 176, 102 A.3d 1101; see State v. Carrolton, 2011 VT 131, ¶ 15, 191 Vt. 68, 39 A.3d 705 ("As we have stated before, this Court is not a slavish adherent to the principle of stare decisis, but we will not deviate from policies essential to certainty, stability, and predictability in the law absent plain justification supported by our community's ever-evolving circumstances and experiences."). Since Kimball was decided fourteen years ago, it has provided predictability and stability for lenders, borrowers, and courts. The requirement that plaintiffs in foreclosure proceedings demonstrate a right to enforce the legal debt at issue is not a punitive measure, as plaintiff alleges. It enforces long-held requirements that plaintiffs have a legally cognizable interest in the claim being raised. Plaintiff has provided no sound basis to overturn that now.

10

## III.  Application of <u>Kimball</u>

¶ 18.   Plaintiff next argues that even if <u>Kimball</u> is not overruled, it should not apply in this case because <u>Kimball</u> was decided after plaintiff filed suit.  "[T]he general rule [is] that judicial decisions are applied retroactively."  <u>Am. Trucking Ass'ns, Inc. v. Conway</u>, 152 Vt. 363, 377, 566 A.2d 1323, 1332 (1989).  A decision is applied prospectively "only where the case establishes a new rule of law (either by overruling clear past precedent or by deciding a matter of first impression in a manner not clearly foreshadowed), and where its retroactive application would be inequitable."  <u>Id</u>. at 378, 566 A.2d at 1332 (quotation omitted).  The decision of whether to apply a ruling prospectively is usually a matter within the discretion of the trial court.  <u>Id</u>.

¶ 19.   As an initial matter, plaintiff has not demonstrated that it properly preserved this issue for appeal.  "To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it."  <u>State v. Ben-Mont Corp.</u>, 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994).  Here, plaintiff did not ask the trial court to apply <u>Kimball</u> prospectively, and therefore there is no trial court analysis for our review.

¶ 20.   In any event, the requirements for prospective application are not even facially met here.  <u>Kimball</u> did not overrule a prior case.  Although it was a decision of first impression, that result was "foreshadowed" by this Court's existing jurisprudence that emphasized the need for parties to establish their right to bring an action at the outset of a case.  See <u>Bischoff</u>, 2008 VT 16, ¶¶ 16, 21 (holding plaintiffs lacked standing to seek declaratory relief where plaintiffs were strangers to contract at issue).  Indeed, the trial court here foreshadowed <u>Kimball</u> by denying summary judgment because plaintiff had not established that it had "standing" as a holder of the note within the meaning of the UCC.  That ruling was made in May 2010, before <u>Kimball</u> was decided.  Moreover, the equities do not lie in plaintiff's favor.  Establishing plaintiff's status as holder of the note was a matter wholly within plaintiff's control, and plaintiff was aware since at

11

least May 2010 that it would have to demonstrate that status. As this Court indicated in <u>Kimball</u>, it is not "irrationally demanding to expect the foreclosing party to provide adequate, satisfying proof" of its standing to bring suit. 2011 VT 81, ¶ 20.

### IV. Substitution of Party

¶ 21.    Plaintiff also asserts that <u>Kimball</u> recognized the possibility that in a foreclosure action, a party who was not a holder of a note at the time the suit was filed could cure the defect by later filing a motion to be substituted as the real party in interest under Vermont Rule of Civil Procedure 17(a). In <u>Kimball</u>, the bank asserted that even if it did not hold the note at the time the complaint was filed, it should be substituted as the real party in interest under Vermont Rule of Civil Procedure 17(a) because it had attained the status of a note holder. The trial court denied the request, and on appeal we concluded that the trial court did not abuse its discretion in denying substitution given that the bank waited so late in the proceedings to make the request. <u>Kimball</u>, 2011 VT 81, ¶ 19. This Court noted that it was reasonable to ask the foreclosing party "to actually be in possession of its claimed interest in the note, and have the proper supporting documentation in hand when filing suit." <u>Id</u>. ¶ 20. There was no need to reach the question of whether Rule 17 could ever be used to cure a defect in standing when the suit was filed.

¶ 22.    On appeal, plaintiff argues that it could cure the standing problem and be substituted as the real party in interest under Rule 17. Although plaintiff claims that it preserved the issue for appeal by raising it in its summary-judgment motion, a review of the record does not support this assertion. The motion for summary judgment contained a statement of undisputed facts that alleged plaintiff held the note and was assigned the mortgage. An affidavit submitted in support of summary judgment indicated that plaintiff was the holder of the note and mortgage. At no point did plaintiff seek to substitute itself as the party in interest and allege that it had acquired the status of holder of the note within the meaning of the UCC after it filed suit. At all times, plaintiff instead maintained that it was the holder of the note when the suit was filed. Indeed, even

12

on appeal, plaintiff continues to claim that it was a holder of the note when it filed the complaint, so it is unclear how it could be substituted as a party.

¶ 23. Although we note that other courts have concluded that a Rule 17 motion cannot "cure the lack of standing after commencement of the action," given plaintiff's failure to preserve the issue for appeal, we decline to reach the issue. Fed. Home Loan Mortg. Corp. v. Schwartzwald, 2012-Ohio-5017, ¶ 39, 979 N.E.2d 1214; see Deutsche Bank Nat'l Tr. Co. v. Gilbert, 2012 IL App (2d) 120164, ¶ 22, 982 N.E.2d 815 (holding bank could not avoid dismissal for lack of standing by joining itself as current owner of note).

## V. Future Effect of Decision

¶ 24. Finally, plaintiff asks that this Court amend the judgment to indicate that it is without prejudice to refiling. Under Vermont Rule of Civil Procedure 41(b)(3), a dismissal "other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party, . . . operates as an adjudication upon the merits." Plaintiff asserts that a disposition on standing grounds is not an adjudication on the merits, and therefore requests that the judgment for defendant be specifically designated as without prejudice to refiling.

¶ 25. After the trial court concluded that plaintiff had not established standing and entered judgment in defendant's favor, plaintiff filed a motion under Vermont Rule of Civil Procedure 59(e), arguing that disposition of the case based on a lack of standing did not equate to a disposition on the merits and therefore the judgment should be designated without prejudice. The trial court denied the motion, concluding that a subsequent court would be better situated to determine the preclusive effect to apply to its decision.

¶ 26. On appeal, plaintiff argues that under Kimball the proper course is to dismiss without prejudice because there was no adjudication on the merits. 2011 VT 81, ¶ 22 (explaining that dismissal for lack of standing was not adjudication on merits and therefore dismissal was without prejudice under Rule 41(b)(3)). In Cenlar FSB v. Malenfant, this Court explained that the

13

best practice is for courts to refrain from dictating the "preclusion consequences at the time of deciding a first action." 2016 VT 93, ¶ 42, 203 Vt. 23, 151 A.3d 778 (quotation omitted). Instead, when suit is initiated a second time, that court will be better suited to "independently determine what preclusive effect a prior judgment may be given." Id. (quotation omitted). We follow this advice and decline to address the preclusive effects of this judgment on any subsequent action involving the same parties.

Affirmed.

FOR THE COURT:

_____
Chief Justice