**Robin Desrochers (Ashline) v. Tim E. Desrochers**
**(Office of Child Support, Appellant)**

[795 A.2d 1171]

No. 00-046

Present: Amestoy, C.J., Morse, Johnson and Skoglund, JJ., and Cohen, Supr. J.,
Specially Assigned

Opinion Filed February 15, 2002

*Thomas F. Garrett,* Legal Services Law Line of Vermont, Burlington, for Plaintiff-Appellee.

*Jeffrey L. Martin,* Office of Child Support, Waterbury, for Appellant.

**Morse, J.** This appeal involves three parties: mother, Robin Ashline, who is an Aid to Needy Families with Children recipient; father, Tim Desrochers, who was obligated to pay mother child support under a 1992 divorce order; and the Office of Child Support, which collects child support on behalf of mother. OCS appeals the decision of the family court determining that OCS did not have the

right to collect and keep child support arrears that accrued prior to mother's receipt of ANFC benefits, but paid to her *after* her period of ANFC benefits and concomitant assignment of child support terminated. OCS argues that the terms of the assignment agreement signed by mother, as well as 33 V.S.A. § 3902 and 45 C.F.R. § 302.51, allow OCS to continue to collect the arrears until they have been reimbursed in full for the benefits paid to her.

Mother cross-appeals and argues that she is entitled to the entire amount of arrears that was reduced to a judgment in her favor by the family court in a March 1994 order, including amounts collected by OCS while she received benefits. She contends that the assignment agreement did not constitute a waiver of her rights under the court's 1994 judgment.

Because the arrears in question were reduced to a judgment for mother, we cannot agree with OCS that the terms of the assignment agreement she entered into under 33 V.S.A. § 3902, which assigned her right to child support, including past due support, in exchange for ANFC benefits, operated also as an assignment of her rights under the family court's 1994 judgment. Therefore, we modify the judgment of the family court to award mother the entire amount ordered paid to her in the 1994 judgment withheld by OCS.

The facts of this case are not disputed. A daughter was born to mother and father on February 4, 1982. The couple later married on July 15, 1989. They then divorced in December 1992. The family court entered a child support order on May 11, 1992 requiring father to pay mother $33.20 per week. Father fell into arrears on his child support obligation, and OCS brought an enforcement action as an intervenor on January 13, 1994. Father and mother appeared pro se. All three parties stipulated to the entry of an order by the family court that required father to pay mother a total of $1956.36 in arrears and OCS a total of $494.63 in arrears, as mother had received ANFC benefits for a period of time prior to the court's order. The order explicitly provided that "[p]ayment on arrears owed to State shall begin *after* arrears owed to [mother] have been *paid in full.*" (Emphasis added.) The order provided that the judgment be paid through wage withholding administered by OCS. No party sought to either amend or appeal the judgment.

Several months after the court's order, mother again applied for ANFC benefits. As part of her application, she agreed to assign her rights to child support to OCS. According to mother, even prior to

the execution of this agreement, however, she did not receive any of the payments made on the judgment through OCS. OCS does not appear to contest this assertion. During the period she did receive ANFC benefits, OCS continued to collect and retain payments made on the judgment. After the termination of mother's ANFC benefits, OCS transferred current support amounts to her, but continued to keep payments made by father towards mother's portion of the 1994 judgment.

Mother unsuccessfully sought administrative review of OCS's actions and then appealed to the family court. A magistrate reversed the decision and ordered OCS to pay the entire amount of arrears owed to mother under the 1994 judgment, grounding its decision on its determination that withholding this money was not in the best interest of the child. The magistrate noted that, consequently, the court did not need to decide whether mother knowingly waived any of her legal rights to the amount specified in the 1994 judgment. OCS then appealed the magistrate's decision. The family court modified the magistrate's judgment, concluding that, under the statute governing assignment of arrears accruing under a child support order, OCS was entitled to the portion of arrears collected during the time mother was receiving benefits, but any payments made by father towards the judgment after her benefits ended should go to her. Both OCS and mother appeal from this decision.

Title 33, § 3902 provides in relevant part:

> (a) As a condition of eligibility for public assistance, each applicant or recipient shall assign to the department [of prevention, assistance, transition, and health access] any right to support from a responsible parent which has accrued at the time of the assignment . . . .
>
> . . . .
>
> (c) . . . When an assignment is in effect pursuant to subsection (a) of this section, any amounts accrued under the support obligation as of the date of assignment, and any amount accruing while the assignment is in effect, shall be owing to and payable to the department . . . without further order of the court.

33 V.S.A. § 3902; see also 42 U.S.C. § 602(a)(26)(A) (1994) (repealed and replaced 1996) (requiring state plans distributing federal aid to include provision for the assignment of child support rights by a

recipient). OCS argues that the distribution of payments collected from father, specifically the portion of which was to be retained by OCS pursuant to mother's assignment under § 3902, was governed by 45 C.F.R. § 302.51 as it was in effect at the time mother executed her assignment agreement. See 45 C.F.R. § 302.51 (1994) (amended 1999) (establishing requirements for the distribution of support collections). At that time, 45 C.F.R. § 302.51(f) provided: "When a family ceases receiving assistance under the State's . . . plan, the assignment of support rights . . . terminates, except with respect to the amount of any unpaid support obligation that has accrued under such assignment." *Id.* OCS contends that the above language, in conjunction with mother's assignment agreement, permitted it to retain amounts collected under the 1994 judgment even after her grant terminated. OCS concedes, however, that under an amendment to 42 U.S.C. § 657, it no longer may retain payments towards arrears after a recipient's benefits are terminated if those arrears were not collected by October 1, 2000. Therefore, OCS's argument regarding the law governing this case is isolated in time.

While we question the interpretation OCS gives the language of § 302.51(f) regarding arrears accruing before a grant begins, we need not decide whether it generally allowed OCS to continue to collect arrears after termination of benefits pursuant to assignment agreements, because the terms of the assignment agreement executed by mother in this case did not encompass the amount awarded to her in the family court's 1994 judgment. The agreement she signed stated:

> I hereby assign all my support rights for any and all children for whom I am requesting assistance and my rights to receive support from the above named noncustodial parent to the [department] in order to receive a grant of Aid to Needy Families with Children (ANFC) or Medicaid. . . . If the Office of Child Support collects any past due support, the money will be used to reimburse [the department] for my ANFC before any support is paid to me.

The agreement makes no mention of mother's right to collect on existing court judgments, or on the 1994 judgment in particular.

■ We have previously noted that, although child support amounts become judgments against a parent as they come due under an existing child support order, 15 V.S.A. § 606(b), when arrears are

actually reduced to a judgment, that judgment takes on legal significance distinct from that of the original child support order. *Hixson v. Plump*, 167 Vt. 202, 207, 704 A.2d 1159, 1162-63 (1997) ("judgments" automatically arising under § 606(b) are markedly different from a judgment adjudicating the amount of arrears actually due). It is treated just like any other judgment. See *id.* at 207, 704 A.2d at 1162; see also 15 V.S.A. § 606(a) (judgment for past due child support "shall be as binding and as enforceable in all respects as though rendered in any other civil action").

■ When the family court entered judgment regarding father's arrears, including the portion to be paid mother and its priority to amounts owed OCS because of previous benefits paid to her, and it was not appealed, it became a final judgment on the merits. The mere act of reapplying for benefits did not undo the effect of the court's judgment, nor mother's rights under the judgment. Like any other court judgment, however, it was potentially assignable, but only where the requisite elements of an assignment were present. An assignment agreement must clearly reflect an intent to assign the right in question. See *Twin Valley Motors, Inc. v. Morale*, 136 Vt. 115, 118, 385 A.2d 678, 680 (1978) (noting that included in the "essential ingredients" of a valid assignment of a right are a complete authorization amounting to a transfer of the obligation and an intentional establishment of an irrevocable right in the assignee); *In re Kelton Motors, Inc.*, 97 F.3d 22, 28 (2d Cir. 1996) (noting in case determining whether debtor in bankruptcy proceeding possessed any legal or equitable interest in property under Vermont state law, that, although an effective assignment requires no particular words of art, agreement must still reflect the intent of the owner of a claim to transfer it); see also *Herzog v. Irace*, 594 A.2d 1106, 1108 (Me. 1991) ("For an assignment to be valid and enforceable . . . the assignor must make clear his intent to relinquish the right to the assignee . . . .").

■ The above-quoted language of the assignment agreement cited by OCS may have assigned any support rights accruing under the existing child support order, but the language is neither clear enough nor specific enough to effect an assignment of mother's rights under the family court's separate 1994 judgment. As noted above, the agreement makes no mention of any judgment. If OCS had wished for mother to assign her rights under the judgment in addition to her

general right to support under the existing child support order, it could have included language doing so. In the absence of such language, OCS cannot claim such a benefit.

*Modifying the family court's order to award Robin Ashline the entire amount to be paid to her under the court's March 1994 judgment retained by the Office of Child Support, and affirmed as modified.*