NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 50

No. 22-AP-070

| | |
|---|---|
| OCS/Chelsey Dionne | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Family Division |
| | |
| Carlton Anthony | June Term, 2022 |

Kirstin K. Schoonover, J.

Kyle Hatt, Office of Child Support, Springfield, for Plaintiff-Appellee.

Jacob Oblak of Bergeron, Paradis & Fitzpatrick, LLP, Essex Junction, for Plaintiff-Appellant Dionne.

PRESENT: Reiber, C.J., Eaton, Carroll and Cohen, JJ., and Mello, Supr. J., Specially Assigned

¶ 1. **COHEN, J.** Mother challenges the denial of her request that a child-support order be made retroactive and that she be awarded the arrearage. A magistrate judge found that mother assigned her right to any past-due support to the Office of Child Support (OCS) as a condition of receiving benefits on behalf of her child and that the State waived any arrearages. The family division affirmed. Mother argues on appeal that she did not assign OCS her right to past-due support. We affirm.

¶ 2. The record indicates the following. Mother and father are the parents of a child born in November 2017. Mother applied for and received Reach Up benefits on the child's behalf. See generally 33 V.S.A. § 1102(a) (describing purpose of Reach Up program); id. § 1103(a)

(stating that "[f]inancial assistance shall be given for the benefit of a dependent child to the relative or caretaker with whom the child is living, unless otherwise provided"). The law requires that:

> As a condition of eligibility for public assistance, each applicant or recipient shall assign to the Department [for Children and Families] any right to support from a responsible parent that has accrued at the time of the assignment and that the applicant may have in the applicant's own behalf or on behalf of any other family member for whom the applicant is applying or receiving assistance.
>
> . . . .
>
> Whenever a support obligation is in effect against a responsible parent for the benefit of a dependent child or a custodial parent, payments required under the support obligation shall be sent to the Office of Child Support upon notice to the responsible parent, without further order of the court. When an assignment is in effect pursuant to subsection (a) of this section, any amounts accrued under the support obligation as of the date of assignment, and any amount accruing while the assignment is in effect, shall be owing to and payable to the Department for Children and Families without further order of the court.

Id. § 3902(a), (c).

¶ 3. Consistent with this statute, mother expressly agreed to the following in connection with her request for benefits:

> As a condition of eligibility for Reach Up or Postsecondary Education financial assistance, federal and state laws require families to apply for and receive services from the Office of Child Support (OCS) and to assign all rights to support to the State of Vermont, Department for Children and Families (DCF). While you receive financial assistance, OCS will collect your support and forward it to the Economic Services Division (ESD) of the DCF.
>
> To receive financial assistance in the Reach Up or Postsecondary Education programs, I agree to assign all my rights to support from the above-named noncustodial parent to the State of Vermont, Department for Children and Families (DCF). I understand that my financial assistance may be funded with state or federal funds and, depending upon the type of funding of my grant, my assignment of child support includes my rights to all current support up to the amount of the support obligation or the assistance grant, whichever is less:

2

> • owed to me while I receive federally-funded financial assistance, no matter when the Office of Child Support (OCS) collects it.
>
> • owed to me if collected while I receive state-funded financial assistance.
>
> Any additional amounts of child support collected while I am receiving state-funded assistance that are not assigned under the above referenced assignments will be disbursed to me.

¶ 4. An information sheet accompanied the form that mother signed. It repeated much of the information cited above and provided some additional detail. It stated that:

> Reach Up or PSE [(Postsecondary Education)] financial assistance may be funded with state or federal funds. Depending upon the type of funding, assignment of child support includes the rights to all current support up to the amount of the support obligation or the assistance grant, whichever is less. This includes amounts:
>
> • owed while the family receives federally-funded financial assistance, no matter when the Office of Child Support (OCS) collects it. This means that current support that becomes arrears if not paid to the state in the month it is owed continues to be owed to the state;
>
> • owed if collected while the family receives state-funded financial assistance.

¶ 5. In July 2019, mother and father stipulated to a parentage order. In August 2020, OCS filed a petition for support and collection of debt, seeking a judgment in its and mother's favor for any debt due and owing from father. OCS noted that mother received public assistance on behalf of the minor child and that she had assigned all support rights to OCS pursuant to 33 V.S.A. § 3902(a). Mother agreed in writing that these assertions were accurate.

¶ 6. At a March 2021 hearing, OCS stated that mother was receiving $575 per month in Reach Up benefits for her child. Mother again agreed that she had assigned her support rights to OCS. OCS informed the court that it sought a forward-looking child-support order and not one made retroactive to August 2020, the date it filed the child-support petition. Mother argued that she had the right to seek an order retroactive to August 2020 and to claim the arrearage for herself

3

even though she continued to receive state-funded benefits. Mother argued that her assignment drew a distinction between federally funded and state-funded benefits and that she was entitled to keep past-due child support for the months she received state-funded benefits. The court directed the parties to file legal memoranda on this question. The magistrate ordered father to pay interim child-support of $216.65 per month, with an effective date of May 1, 2021, at the State's request. It scheduled a second hearing to consider father's request for a downward departure from the child-support guideline amount of $463 per month.

¶ 7. Following a second hearing in June 2021, the magistrate denied father's request for a downward deviation and ordered him to pay $463 per month, retroactive to May 1, 2021. The magistrate also denied mother's request to make its award retroactive to August 2020. It found that mother assigned her rights to child support to the State in March 2020 as a condition of receiving benefits. The State's right to seek child support from a noncustodial parent included the right to waive retroactivity. OCS moved to establish child support in August 2020, and it waived any claim to retroactive benefits. Mother thus had no right to any past-due amounts. Mother appealed to the family division, which affirmed the magistrate's order. This appeal followed.

¶ 8. On appeal, mother reiterates her assertion that she did not assign OCS her rights to any arrearages when she applied for Reach Up benefits. She maintains that the assignment plainly states that the scope of the assignment depends on whether she received state-funded or federally funded benefits. Mother construes the agreement as assigning child-support payments owed (but not paid) only for those months in which she received federally funded benefits. With respect to the period that she received state-funded benefits, mother contends that she assigned her right to monthly child support only if the support was paid during the month it was due. She argues that this is what is meant by the term "the right to all current support." She finds it significant that the form explains, with respect to federally funded benefits, that the State has the right to collect "all current support up to the amount of the support obligation or the assistance grant" at any time and,

4

in the next sentence, it states: "[t]his means that current support that becomes arrears if not paid to the state in the month it is owed continues to be owed to the state." She notes that the word "arrears" is not mentioned again with respect to the State's right to collect "all current support" "owed if collected while the family receives state-funded financial assistance."

¶ 9. We review the magistrate's decision using the same standard as the family division. We will uphold the magistrate's findings unless clearly erroneous and "its conclusions if reasonably supported by the findings." Golden v. Worthington, 2020 VT 71, ¶ 7, 213 Vt. 77, 239 A.3d 259 (quotation omitted). "Our review of questions of law is nondeferential and plenary." Id. (quotation and brackets omitted). The magistrate did not err in construing the terms of the assignment here.

¶ 10. "In construing a contract, the court seeks to implement the parties' intent." Dep't of Corr. v. Matrix Health Sys., P.C., 2008 VT 32, ¶ 12, 183 Vt. 348, 950 A.2d 1201. "[W]e must consider the contract as a whole and give effect to every part contained therein to arrive at a consistent, harmonious meaning, if possible." Id. (quotation omitted). "[W]hen the language of the contract is clear on its face, we will assume that the intent of the parties is embedded in its terms." Id. (quotation omitted).

¶ 11. We reject mother's construction of the parties' agreement. Mother plainly assigned "all rights to support" to the State, which includes the right to waive any arrearages. As an initial matter, this assignment is required by statute. See 33 V.S.A. § 3902(a). This requirement is also reiterated in the administrative rules, which provide in relevant part:

> Participating parents who receive assistance through a Solely State Funded Program (see rule 2390) shall assign all child support rights to the DCF. The participating parent shall apply for services from the OCS, if not already receiving such services, and cooperate fully with the OCS in their efforts to collect the assigned support. The department shall deny or terminate assistance to participating parents, caretaker relatives and guardians who fail or refuse to apply for services from OCS.

. . . .

> Assignment of support rights is the legal procedure by which a person receiving public assistance agrees to turn over to the state any right to child support, including arrearages, paid by the noncustodial parent in exchange for receipt of a financial assistance grant and other benefits. The state will use a portion of such child support to defray or recoup its expenditures for Reach Up financial assistance.

> Assignment of support rights is a condition of eligibility for Reach Up financial assistance. This requirement applies to parents and other caretakers and may not be waived. Assignment of support rights to the department means all rights to support from any other persons applicants for financial assistance may have, including rights to support in their own behalf or on behalf of any members of the Reach Up assistance group.

Reach Up §§ 2235, 2235.1, Code of Vt. Rules 13 170 220 http://www.lexisnexis.com/hottopics /codeofvtrules.

¶ 12. Mother signed a written agreement that reflected these requirements. As set forth above, she acknowledged that "[a]s a condition of eligibility for Reach Up or Postsecondary Education financial assistance, federal and state laws require families to apply for and receive services from the Office of Child Support (OCS) and to assign all rights to support to the State of Vermont, Department for Children and Families (DCF)." She further agreed that "[t]o receive financial assistance in the Reach Up or Postsecondary Education programs," she "assign[ed] all my rights to support from the above-named noncustodial parent to the State of Vermont, Department for Children and Families (DCF)." We give the phrase "[a]ll my rights" its plain meaning, which includes the right to any arrearages that might accrue. As mother concedes, the right to claim any arrearages includes the right to waive them.

¶ 13. The plain language of the assignment does not state that its scope depends on the type of funding, as mother argues. It refers to the timing of collection. The agreement states: "I understand that my financial assistance may be funded with state or federal funds, and depending upon the type of funding of my grant, my assignment of child support includes my rights to all

6

current support up to the amount of the support obligation or the assistance grant, whichever is less: owed to me while I receive federally-funded financial assistance, no matter when the Office of Child Support (OCS) collects it" or "owed to me if collected while I receive state-funded financial assistance."

¶ 14. This language describes when OCS can collect child support owed to a parent during a period in which the parent received federally funded or state-funded benefits. OCS can collect the former anytime, regardless of whether the person continues to receive federally funded benefits. It can collect the latter only while the person is receiving state-funded benefits. In other words, a recipient's rights to child support are assigned to the State for the entire period they receive state-funded benefits. Once a state-funded grant closes, that party can seek any arrearages for themselves; that is not true for federally funded benefits. This is the plain meaning of the language used on the form. We note that an updated version of the form mother signed contains this same information, phrased slightly differently. See generally Vt. Dep't for Child. & Fam., Application for Child Support Services for Reach Up/PSE Applicants, https://outside.vermont.gov /dept/DCF/Shared%20Documents/ESD/Forms/137.pdf [https://perma.cc/M9CK-Z5UG].

¶ 15. The phrase "all current support . . . owed to me if collected while I receive state-funded financial assistance" plainly encompasses arrearages. Putting aside that mother appears to rely on language contained in an information sheet rather than the actual assignment language, the reference to arrearages on this form plainly was not intended to limit the scope of the rights assigned to the State. To the contrary, it shows that that arrearages are encompassed within the definition of "all current support."

¶ 16. As set forth above, mother has at all relevant times received state-funded benefits and continues to receive these benefits. She assigned "all rights to support" as a condition of receiving these benefits. In August 2020, while mother was receiving Reach Up benefits, OCS sought to collect the support money that father owed to mother on behalf the parties' minor child.

7

OCS had the right to determine whether to request that the child support order be made retroactive to the filing date and thereby collect the money owed during this period. It declined to do so. Mother had no independent right to seek these payments for herself, having assigned her rights to OCS.

¶ 17. Mother offers no persuasive argument to the contrary. We reject her convoluted interpretation of the plain terms of the agreement. Moreover, the State's decision not to request a retroactive award does not take away any right belonging to mother, as she asserts. The right to collect any arrearage belonged to the State, not mother. There is nothing confusing about this conclusion, and it does not contravene public policy; it is for the State, in its discretion as the right-holder, to decide whether to pursue a retroactive child-support award, not mother.

¶ 18. We do not read the magistrate's decision as "implicitly holding that 33 V.S.A. § 3902 . . . overcome[s] any arguments regarding the assignment's actual language," as mother posits. In any event, we have reviewed the language of mother's agreement de novo in this appeal. As set forth above, mother assigned her rights to OCS, and OCS did not seek to make the child-support order retroactive to August 2020.

¶ 19. This case is not like Desrochers v. Desrochers, 173 Vt. 312, 795 A.2d 1171 (2002), cited by mother. Most critically, in that case, the mother had a final judgment order awarding her a specific amount of past-due child support. Mindful of the "legal significance" associated with final judgment orders, we held that the assignment of rights that the mother later signed in exchange for receiving Aid to Needy Family benefits did not encompass her existing judgment order. Id. at 316, 795 A.2d at 1173. We explained that the mother's "mere act of reapplying for benefits did not undo the effect of the court's judgment [awarding her a specific amount of past-due support], nor [the] mother's rights under the judgment." Id. at 316, 795 A.2d at 1174. Although the judgment "was potentially assignable," we found that there was no clear or specific

8

language to this effect in the assignment itself; the judgment was not mentioned at all. We thus concluded that it had not been assigned.

¶ 20.    Unlike in <u>Desrochers</u>, mother has no preexisting final judgment order awarding her a specific amount of past-due child support. The assignment in this case clearly and specifically assigned all of mother's support rights to the State, which includes the right to waive past-due amounts. We have considered all arguments discernable in mother's brief and find them all without merit. The magistrate judge did not err in rejecting mother's request to be awarded retroactive child support benefits.

<u>Affirmed</u>.

FOR THE COURT:

_____
Associate Justice

9